## In re INITIATIVE PETITION No. 2, CUSHING, OKLAHOMA.

### JURNEY et al. v. HARLOW et al.

No. 22516.  Opinion Filed Feb. 16, 1932.

Withdrawn, Corrected, Refiled, and Rehearing Denied April 19, 1932.

Poe, Lundy & Morgan and H. R. Duncan, for plaintiffs in error.

S. J. Berton, City Atty., City of Cushing, Okla., and Lydick & Brett, for defendants in error.

SWINDALL, J. This matter was begun by the circulation of an instrument labeled Initiative Petition No. 2, Cushing, Okla., whereby the petitioners, Doyle Jurney et al., as legal voters of the city of Cushing, Okla., sought to have submitted to the qualified electors of that city for approval or disapproval a certain franchise according to the terms of which the Interstate Power Company, a Delaware corporation, was to be granted a franchise for a period of 25 years for the operation of an electric light system in the city of Cushing, Okla. The city of Cushing maintains its city government under a charter. It is urged by George Harlow et al., protestants, and herein styled defendants in error, in their brief, that an exact copy of the petition and proposed ordinance was not filed in the office of the chief clerk of the city before the petitions were circulated, and that the chief clerk did not, when the original petition was filed in his office, forthwith cause to be published notice setting forth the date of such filing and advising any citizen of the city of his right to protest as required by

section 6631, C. O. S. 1921. This contention does not seem to be well taken. The record shows that a true and exact copy of the petition and proposed franchise ordinance were filed in the office of the chief clerk and the chief executive officer of Cushing, Okla., on the 2nd day of March, 1931. The initiative petitions after being circulated by the petitioners were presented to the chief executive officer of the city of Cushing on March 16, 1931, and at his direction were on that date filed with the chief clerk. Under the holdings of this court, that amounted to a filing of the same with the chief executive officer. Mayor and Councilmen of City of Pawhuska v. Pawhuska Oil & Gas Co., 28 Okla. 563, 115 P. 353. However, we are of the opinion the petitions were properly filed with the chief clerk. The petitions are not required to be filed with the chief executive officer until the sufficiency thereof is determined in the manner and under the procedure provided by statute. George Harlow, protestant, filed in the office of the chief clerk of the city of Cushing, Okla., a notice in which he notified Doyle Jurney et al., petitioners in error, that he would on the 26th day of March, 1931, file a protest against Initiative Petition No. 2, filed with the chief executive officer of the city of Cushing, S. P. Alles, chairman of the board of commissioners, on the 16th day of March, 1931, as published in the Cushing Citizen, and then describes the franchise ordinance involved in this action. The record is not clear that the protest was filed with the chief clerk of the city of Cushing, Okla., within the time provided by law, but this irregularity appears to have been waived by the parties, as the record shows that on the 23rd day of April, 1931, at the time and place set for hearing the protest against Initiative Petition No. 2, it was agreed between the parties, petitioners in error and respondent, that said hearing may be continued until the 28th day of April, 1931, at 10 o'clock a. m., at which time the parties agreed to commence said hearing and continue said hearing until finished, and on that date said hearing shall be passed upon by the chief clerk. This instrument was filed by T. E. Hough, city clerk, under the seal of the city of Cushing, Okla., signed by the city clerk and approved by the attorneys for the parties in interest. On the 28th day of April, 1931, the records show that the hearing was continued to May 5, 1931, for the reason that the petition and all papers concerning the same were in the hands of the grand jury. On May 5, 1931,

the record shows that the hearing was continued to May 15, 1931, by the city clerk for the reason that the petition was in the hands of the court at Stillwater, Okla. On May 15, 1931, the hearing was further continued by the city clerk until the 5th day of June, 1931, for the same reason. On June 5, 1931, the city clerk again continued the hearing for the reason that there was pending in the district court of Payne county, Okla., an action wherein an alternative writ of mandamus was prayed and summons was not returnable until the 5th day of June, 1931. On June 5, 1931, there was filed in this court an original action styled State of Oklahoma ex rel. Doyle Jurney, Plaintiff, v. Joe Long, Chairman of the Board of Commissioners of the City of Cushing, Okla., et al., Defendants, No. 22424, praying for a writ of mandamus. An alternative writ of mandamus was issued ordering the defendants to act upon said initiative petition and determine the sufficiency thereof and in the event they find the same sufficient call an election and submit to the qualified electors of the city of Cushing, Okla., the proposed franchise ordinance for adoption or rejection upon 30 days' notice or that the defendants appear before this court at 10 o'clock a. m. on the 22nd day of June, 1931, to show cause for their refusal so to do, and that they then and there return said writ together with their proceedings thereunder. The defendants in that action were the board of commissioners of the city of Cushing, Okla., the city clerk not being made a party. For return to the alternative writ of mandamus the commissioners say first that the city clerk of the city of Cushing, Okla., is the only official who has authority to consider, pass upon, and determine in the first instance the sufficiency of the initiative petitions referred to in said writ. The return to the writ sets up other excuses and reasons for not calling the election which are not here material. On June 26, 1931, a petition styled petition in error was filed by Doyle Jurney et al., Plaintiffs in Error, v. George Harlow et al., Defendants in Error. While this pleading is styled a "petition in error," it is really a petition praying this court to exercise its original jurisdiction and general superintending control over all inferior courts and all commissions and boards created by law, and in the instant case the chief clerk and chief executive officer of the city of Cushing, Okla., and to require action by the chief clerk and the chief executive officer upon said initiative petition demanding that an election be

called that the qualified electors of the city of Cushing may vote upon said proposed franchise ordinance. The petitioners in the last mentioned action recite the efforts of the petitioners to secure a hearing and determination of the initiative petitions filed with the chief clerk at the direction of the chief executive officer. Exhibit "C" attached to said petition is a notice of an appeal to Joe Long, chairman of the board of commissioners, and to the members of the board of commissioners of the city of Cushing, Okla., and was served upon Rex Wingate, vice chairman of the board of city commissioners, upon a showing that service could not be made upon the chief executive officer of the city for the reason that he was absent from the city and the petitioners were unable to secure service upon him. The notice was also served upon S. J. Berton, city attorney, and E. T. Hough, city clerk and chief clerk of the city of Cushing, Okla. Upon the petition being filed in the last mentioned action an order was issued by this court directing all papers and documents on file in connection with Initiative Petition No. 2, Cushing, Okla., to be certified to this court. The defendants in error filed and presented a motion to dismiss said cause for want of jurisdiction, which motion was considered and denied by this court. A petition to rehear the motion to dismiss was presented and denied. On September 28, 1931, this matter came on for hearing upon motion filed by appellants requesting that said cause be set down for hearing. The parties being present by counsel and the court being fully advised, found said motion should be sustained and cause set for hearing, and that the same should be referred to the referee of this court to take testimony and make findings of fact. On October 8, 1931, testimony was taken before the referee of this court at Oklahoma City, Okla., and the referee made findings of fact and exceptions to such findings of fact by referee have been submitted. Under the present condition of the record we do not think that discussion of the findings by the referee is material, as the parties have admitted that the petitions to initiate the franchise ordinance contained the requisite number of qualified electors and the only remaining questions are questions of law that may arise during the further progress of the proceedings, and owing to the long delay that has been occasioned in having the franchise ordinance submitted to the electors of Cushing, Okla., and the dispute among counsel for the respective parties relative to the construction to be placed upon certain provisions of the Constitution and the acts of the Legislature vitalizing the same and acts of the Legislature to prevent corruption in the making, procuring, and submitting initiative and referendum petitions and the former decisions of this court, we feel that we should pass upon the same at this time.

It appears to us that there has been entirely too many delays caused by technicalities urged by protestants and apparently taken too seriously by the chief clerk of Cushing, Okla. The procedure is not mandatory, but if substantially followed will be sufficient. The protestants seem to have objected at every stage of the proceedings; finding it recorded in the first law book that in the "multitude of counselors there is safety," they seem to think that in the multitude of delay and objections there is hope. Neither the city clerk nor chief executive officer of the city of Cushing nor this court should stumble over technicalities and miss the path so clearly lighted by the provisions of our Constitution and legislative enactments vitalizing the same and throwing safeguards around the electors to prevent corruption in making, procuring, and submitting initiative and referendum petitions.

The first question for us to determine is whether or not the chief executive officer of the city of Cushing, Okla., should call an election and submit to the qualified electors of the city of Cushing the question of whether or not a franchise should be granted to the Interstate Power Company as requested in Initiative Petition No. 2 and a copy of the franchise ordinance attached to the same. In disposing of this question it is necessary to construe together certain provisions of the Constitution and certain enactments of the Legislature enacted to vitalize and carry the same into force and also certain legislative enactments to prevent corruption in the making, procuring, and submitting initiative and referendum petitions.

Section 1 of article 5 provides that:

"The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatves; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

Section 2, Id., among other things, provides that:

"The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed."

Section 3, Id., contains this clause:

"The Legislature shall make suitable provisions for carrying into effect the provisions of this article."

Section 4 (a) of article 18 of the Constitution provides that:

"The powers of the initiative and referendum, reserved by this Constitution to the people of the state and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this state, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution."

Section 5 (a), Id., provides that:

"No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election; and the legislative body of any such corporation may submit any such matter for approval or disapproval to such electors at any general municipal election, or call a special election for such purpose at any time upon 30 days' notice; and no franchise shall be granted, extended, or renewed for a longer term than 25 years."

Section 5 (b), Id., provides that:

"Whenever a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election, demanding that a franchise be granted, extended, or renewed, shall be filed with the chief executive officer of said corporation, the chief executive officer shall, within ten days thereafter, call a special election, at which he shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if, at said election, a majority of the said electors voting thereon shall vote for the grant, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city."

Section 8 of article 5 provides that:

"Laws shall be provided to prevent corruption in making, procuring and submitting initiative and referendum petitions."

The Legislature in carrying out the intention of the framers of the Constitution and the people in adopting the same, at the first session of that body after the Constitution was adopted, enacted an act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles 5 and 18 of the Constitution of the state of Oklahoma, to regulate elections thereunder and to punish violations of this act. Chapter 44, art. 1, Sess. Laws 1907-08, p. 440. Section 17 of art. 1, ch. 44 is the same as section 6647, C. O. S. 1921, and section 19 of said chapter is the same as section 6650, C. O. S. 1921. The Legislature in 1910 enacted chapter 66, Session Laws 1910, page 121, being an act carrying into effect provisions relating to the initiative and referendum; prescribing the method of procedure for submitting and voting for proposed amendments to the Constitution and other propositions and prescribing the method of appeal from petitions filed or from the ballot title; repealing sections 6, 7, and 16 of article 1, chapter 44, of the Session laws 1907-08. The Legislature in 1910-11, by chapter 107, Session Laws 1910-11, chapter 235, passed an act entitled:

"An act amending section 2 of article 1, chapter 66, of the Session Laws of 1910, the same being a bill entitled, 'An act carrying into effect provisions relating to the initiative and referendum, prescribing the method of procedure for submitting and voting proposed amendments to the Constitution, and other propositions, and prescribing the method of appeals from petitions filed or from the ballot,' etc."

Section 2 of that act is the same as section 6631, C. O. S. 1921. In Ex parte Wagner, 21 Okla. 33, 95 P. 435, this court held that:

"The initiative and referendum provisions in the Constitution (article 5, secs. 1, 2, 3, 4, 5, and article 18, secs. 4, 5) are not in conflict with the Constitution of the United States (sec. 4, art. 4) guaranteeing to every state a republican form of government."

And that:

"Said provisions as contained therein are not self-executing, but are made effective by an act of the Legislature approved April 16, 1908."

In State ex rel. Caldwell v. Hooker, County Judge, 22 Okla. 712, 98 P. 964, in paragraphs 3, 4, 5, and 6 of the syllabus, this court held:

"3. In construing a provision of a Constitution, the primary inquiry is to ascertain the intention of the framers, and of the people who adopted the same, and in such construction and determination, technical

rules should be disregarded, and, as a rule, a mean between a strict and a liberal construction followed.

"4. Though a constitutional provision may be self-executing, yet legislation may be desirable for the better protection of the right secured, and to provide a more specific and convenient remedy for carrying out such provision.

"5. The only limitation, unless otherwise expressly indicated, imposed upon the Legislature in such legislation, is that the rights guaranteed thereunder shall not be curtailed, or any undue burdens placed thereon. Supplementary legislation in particulars where, in itself, it is not as complete as may be desirable, may be enacted.

"6. A restriction or limitation upon the power of the Legislature, upon any subject of legislation, will not be presumed or implied, unless from the entire instrument it clearly appears that it was so intended."

In Rakowski v. Wagoner, County Judge, 24 Okla. 282, 103 P. 632, this court held that:

"If a statute is susceptible of two interpretations, that should be adopted which gives the statute the effect evidently intended by the Legislature, especially if the other construction would render the same invalid."

In Atwater v. Hassett, 27 Okla. 292, III P. 802, this court held that:

"An act entitled 'An act carrying into effect provisions relating to the initiative and referendum; prescribing the method of procedure for submitting and voting for proposed amendments to the Constitution and other propositions, and prescribing the method of appeal from petitions filed or from the ballot title; repealing sections 6, 7, and 16 of article 1, chapter 44, of the Session Laws of Oklahoma 1907-08,' is not repugnant to section 57 of article 5 of the Constitution."

Section 6631, C. O. S. 1921, provides that:

"When a citizen, or citizens, desire to circulate a petition initiating a proposition of any nature, whether to become a statute law or an amendment to the Constitution, or for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, file a true and exact copy of same in the office of the Secretary of State, and within 90 days after the date of such filing, the original petition shall be filed in the office of the Secretary of State, and no petition not filed in accordance with this provision shall be considered. When such original petition is filed in said office, it shall be the duty of the Secretary of State to forthwith cause to be published in at least one newspaper of general circulation within the state, a notice setting forth the date of such filing. Any citizen of the state may, within ten days, by written notice to the Secretary of State and to the party or parties, who filed such petition, protest against the same, at which time he will hear testimony and arguments for and against the sufficiency of such petition. A protest filed by any one hereunder may, if abandoned by the party filing same, be revived within five days by any other citizen. After such hearing the Secretary of State shall decide whether such petition be in form as required by the statutes, and his decision shall be subject to appeal to the Supreme Court of the state, and such court shall give such cause precedence over all others, provided, such appeal must be taken within ten days after the decision of the Secretary of State has been made. If the court be at the time adjourned, the Chief Justice shall immediately convene the same for such hearing. It shall be the duty of the appellants to serve notice upon the Secretary of State, in writing, of such an appeal. Whereupon, said Secretary of State shall immediately transmit all papers and documents on file in his office relating to such petition to such court. If the court shall adjudge such petition insufficient, the parties responsible for same shall have the right to correct or amend their petition to conform to the opinion of the court, provided said amendment or change is made within five days. No objection to the sufficiency shall be considered unless the same shall have been made and filed as herein provided."

This court in Russell v. Harrison, 33 Okla. 225, 124 P. 762, held that the word "will" used in this section means "shall," and it is mandatory and being addressed to a public official excludes the idea of discretion. So, under the holding of this court, when a protest is filed, the Secretary of State shall hear testimony and arguments for and against the sufficiency of such petition. In Re Initiative Petition, State Question No. 10, 26 Okla. 554, 110 P. 647, this court, in the second paragraph of the syllabus, held that:

"The written notice to the Secretary of State and to the party or parties who filed the initiative petition, embodying a protest against said petition, having been filed with the Secretary of State, it becomes his duty then and there to fix a day not sooner than five days thereafter in which to hear the same, and it is not essential that such notice be served otherwise upon the party or parties filing said initiative petition."

In the third paragraph of the syllabus, it held:

"The action of the Secretary of State in overruling a motion for continuance will not be disturbed on review here unless it

affirmatively appears that he abused his discretion."

The words "not sooner than five days thereafter," found in section 1, ch. 66, Session Laws 1910, were eliminated from the amendment in Session Laws 1910-11, now section 6631, C. O. S. 1921, so that portion of the section now reads:

"Any citizen, or citizens, may, within ten days, by written notice to the Secretary of State and to the party or parties who filed such petition, protest against the same at which time he will hear testimony and arguments for and against the sufficiency of such petition."

Construing the foregoing cited provisions of the Constitution and enactments of the Legislature together, it appears to us that it was clearly the intention of the framers of the Constitution, and the people in adopting the same, and of the Legislature in enacting laws to vitalize the provisions of the Constitution, and to prevent corruption in making, procuring, and submitting initiative and referendum petitions, that the procedure to determine the sufficiency of the petition and the form of ballot title should be speedily determined in order that the will of the people, if the petitions were found to be sufficient and free from corruption, should be carried into force and the qualified electors permitted to vote upon the proposition in accordance with the initiative petitions and the proposed law, constitutional amendment, or other measure proposed to be submitted to the qualified electors for their vote upon the same. This view is sustained by the former holdings of this court. Caruth, Mayor, v. State ex rel. Tobin, 101 Okla. 93, 223 P. 186; In re State Question No. 138, Initiative Petition No. 89, Milburn v. State Taxpayer's Ass'n, 114 Okla. 285, 244 P. 801.

In cause No. 20424, style "State of Oklahoma ex rel. Doyle Jurney, Plaintiff, v. Joe Long, Chairman of the Board of Commissioners of the City of Cushing, Okla., et al., supra, being a petition for mandamus heretofore referred to in the statement of this case, the plaintiff alleges:

"That the defendants have declared through their attorney, one S. J. Berton, that they intend to and will raise every technical objection in order to defeat the granting of said initiative petition."

We do not desire to be understood as holding that such was the intention of the defendants in that case, and who are also the defendants in this case under consideration, but if such is the intention of the defendants, it is not in accordance with their duties under the Constitution and the laws of this state. In Milburn v. State Taxpayer's Ass'n, supra, this court, speaking through Mr. Justice Phelps, said:

"The objections to such petition are presented in protestants' brief under several separate and distinct heads or divisions, and at the risk of making this opinion unusually voluminous, we shall take up protestants' assignments of error or objections to the petition in the order in which they are presented and dispose of the questions therein raised one by one, in the hope that the procedure and operation of our initiative and referendum law as found in the Constitution and statutes may be made plain and easy of interpretation and application by those who seek to avail themselves of its privileges and benefits."

To this we might add the language of a learned jurist who said:

The ballot is an instrument that
  comes down as still,
As snow flakes fall upon the sod,
But executes a freedman's will,
As lightning does the will of God.

Section 6632, C. O. S. 1921, provides that:

"When a measure is proposed as a constitutional amendment by the Legislature, when the referendum is ordered against any measure passed by the Legislature, or when any measure is proposed by initiative petition, whether as an amendment to the Constitution or as a statute, it shall be the duty of the parties submitting such proposition to prepare and file one copy of same with the Secretary of State and one copy with the Attorney General, such copies to contain a ballot title of not exceeding 100 words, which shall contain the gist of the proposition without any argument or statement either for or against such measure. Within three days after the filing of such copy and ballot title with the Attorney General, he shall, in writing, notify the Secretary of State whether or not such proposed title is in legal form and in harmony with the law. Should such proposed title not be in proper form in the opinion of the Attorney General, it shall be his duty, within said three days, to prepare and file a title which does conform to the law. Within five days after the receipt of the notice of approval by the Attorney General, or of a revised or amended title from him, the Secretary of State shall transmit to the Secretary of the State Election Board an attested copy of the pending proposition, including such approved title; Provided, however, that should an appeal be prosecuted from such ballot title within the time specified by the following section, then the Secretary of State shall certify to said Secretary of the State Election Board the title which is finally approved by the Supreme Court."

Section 6633, C. O. S. 1921, provides that:

"Any person who is dissatisfied with the wording of the ballot title prepared as hereinbefore provided, may, within ten days after the same is filed as aforesaid, appeal to the Supreme Court by petition in which shall be offered a substitute title for the one appealed from. Upon the hearing of such appeal the court may correct or amend the title before the court, or accept the substitute suggested, or may draft a new one which will conform to this chapter."

Section 6634, C. O. S. 1921, provides that:

"Notice of the appeal provided for in the foregoing section shall be served upon the Attorney General and upon the party who filed such title, or on any of such parties, at least five days before such appeal is heard by the court. The Attorney General shall, and any citizen interested may, defend the title appealed from. Other procedure upon such appeals shall be the same as is prescribed for appeals from petitions filed as set forth in section 6631."

Section 6647 provides that:

"In all cities, counties, and other municipalities which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved by the Constitution to the whole people thereof, as to their municipal legislation, the duties required of the Governor and Secretary of State, by this chapter, as to state legislation, shall be performed as to such municipal legislation by the chief executive and the chief clerk; and the duties required by this chapter of the Attorney General shall be performed by the attorney for the county, district or other municipality. The provisions of this chapter, including those relating to preparation of arguments, shall apply to every city and town in all matters concerning the operation of the initiative and referendum in its municipal legislation on which such city or town has not made or does not make conflicting provisions."

Section 6652 provides that:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

The city of Cushing has not provided by ordinance or by charter for the manner of exercising the initiative and referendum powers reserved by the Constitution. Section 4 of article 1 of the charter provides that:

"Article eighteen of the Constitution of the state of Oklahoma, under the title 'Municipal Corporations,' and every section thereof, including the initiative and referendum, and all other provisions and sections of said article eighteen, is hereby adopted and made in full force and effect for the government of the city of Cushing, Okla."

Section 4 of article 2 provides that:

"No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage by those entitled to such right."

It is clear from the provisions of the Constitution that the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and that they reserved to the people of every municipal corporation all legislative authority which it may exercise and amendments to charters for its own government in accordance with the provisions of the Constitution, and that they reserve to the people the right to vote upon the granting, extending, or renewal of franchises, and reserved to the qualified electors of any municipality the right to present a petition signed by a number of qualified electors of any municipal corporation equal to 25 per centum of the total number of votes cast at the next preceding general municipal election to demand that a franchise be granted, extended, or renewed, and that upon such petition being filed with the chief executive officer of such corporation the chief executive officer shall within 10 days thereafter call a special election at which he shall submit the question of whether or not such franchise shall be granted, extended, or renewed, and if after said election a majority of said electors voting thereon shall vote for the granting, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city. This provision of the Constitution is mandatory and must be complied with. It is equally clear that the framers of the Constitution, and the people in adopting the same, intended to safeguard the purity of the ballot and also to prevent corruption in making, procuring, and submitting initiative and referendum petitions, and the Legislature was authorized to enact legislation for carrying the initiative and referendum provisions into force, and to prevent corruption in making, procuring, and submitting initiative and referendum petitions, and that the legislative enactments do not curtail the provisions of the Constitution, and do not unduly burden the same.

It is contended by the petitioners, plain-

tiffs in error in this action, that section 5 (b), article 18, of the Constitution is self-executing. We agree with this contention, but how is it to be determined that a petition signed by a number of qualified electors of a municipal corporation representing themselves to be qualified electors and to constitute 25 per centum of the total number of votes cast at the next preceding general municipal election are in fact qualified electors and do constitute such majority? Who is to determine that the petition and franchise ordinance presented to the chief executive officer of the city is the same petition and ordinance that was circulated at the time the signatures were secured? If the petitions are held to be insufficient in form by the chief executive officer, how are the qualified electors to have the sufficiency thereof determined? Who is to determine the issue as to whether or not there was corruption in making, procuring, and submitting the initiative petitions? Who passes on the form of the ballot title, and various other matters covered by the legislative enactments to carry the constitutional provisions into force and to prevent corruption?

Suppose a citizen, or citizens, should circulate a petition among the qualified electors of a city demanding that the chief executive officer call an election to vote upon franchise ordinance for a water works system, and after the signatures were obtained the parties circulating same should remove the petition and ordinance from the signatures and substitute something entirely different and present the same to the chief executive officer, and he in good faith believed the petition and signatures of the electors demanding that he call an election were genuine, and he called such election, and the people voted a franchise when they thought they were voting for an entirely different one, or suppose a valid petition is filed and some one wanted to defeat the proposed franchise ordinance and he should ascertain the location of such petition, franchise, and signatures in the office of the chief executive officer and should remove the petition and franchise ordinance and attach a different petition and franchise ordinance that would entirely change the proposition proposed. This cannot occur where the law requires an exact copy of the petition and franchise ordinance to be filed in the office of the chief clerk before the same is circulated. Certainly these are proper subjects for legislative enactment in order to guarantee to the state a republican form of government and prevent corruption.

The filing of a petition to initiate a franchise ordinance is not a legislative act, but merely a matter preliminary to the legislative act, and hence an investigation into its sufficiency is not beyond the jurisdiction of the courts. State ex rel. McNarey, District Attorney, v. Olcott, Secretary of State, 62 Ore. 277, 125 P. 303. In arriving at the intention of the framers of the Constitution relative to the initiative and referendum provisions contained therein and of the people in adopting the same we must construe the applicable portions of sections 1, 3, and 8 of article 5 and sections 4 (a), 5 (a), and 5 (b) of article 18 together. In arriving at the legislative intent we must construe together the acts of the Legislature making suitable provisions for carrying into effect the provisions of the Constitution and the provision to prevent corruption in making, procuring, and submitting initiative and referendum petitions made mandatory upon the Legislature by section 3 and section 8 of article 5 of the Constitution, respectively. Section 2, ch. 107, Session Laws 1910-11, now section 6631, O. O. S. 1921, was enacted by the Legislature in accordance with a provision of section 3, art. 5, of the Constitution to carry into effect the initiative and referendum provisions of the Constitution and prescribe the method of procedure for submitting and voting proposed amendments to the Constitution and other initiative propositions provided for in the Constitution. Chapter 44, Session Laws 1907-08, was enacted to vitalize the initiative and referendum provisions of the Constitution of the state of Oklahoma. Section 17 of article 1, ch. 44, now section 6647, C. O. S. 1921, applies to all cities which do not provide by ordinance or charter the manner of exercising the initiative and referendum powers reserved by the Constitution to the whole people thereof as to municipal legislation; the duties required of the Governor and Secretary of State as to state legislation shall be performed as to such municipal legislation by the chief executive officer and the chief clerk of such city. Construing sections 6647 and 6631 together, we hold that when a citizen or citizens of a city, which has not by ordinance or charter provided for the manner of exercising the initiative and referendum powers reserved by the Constitution to the qualified electors thereof. desire to circulate a petition initiating a proposition of any nature, whether to become an ordinance or amendment to its charter or for the purpose of invoking a referendum upon legislative enactments or franchise ordinance, such citizen or citizens shall, when

such petition is prepared and before the same is circulated or signed by electors, file a true and exact copy of same in the office of the chief clerk of said city and within 90 days after the date of such filing, the original petition shall be filed in the office of the chief clerk of said city, and no petition not filed in accordance with such provision shall be considered. When such original petition is filed in the office of the chief clerk of said city, it shall be the duty of the chief clerk to forthwith cause to be published in at least one newspaper of general circulation within the city a notice setting forth the date of such filing. Any citizen or citizens may, within 10 days after such publication, by notice in writing to the chief clerk of said city and to the party or parties who file such petition, protest against the same, at which time said chief clerk shall hear testimony and arguments for and against the sufficiency of such petition. A protest filed by any one being abandoned by the party filing the same may be revived within five days by any citizen or citizens of said city. After such hearing the chief clerk of said city shall decide whether such petition be in form as required by the Constitution, statutes, and provisions of the charter then in force, and his decision shall be subject to appeal to the Supreme Court of the state. It shall be the duty of the appellants to serve notice upon the chief clerk of the said city in writing of such appeal. If the chief clerk of such city shall hold a franchise ordinance sufficient and no notice of appeal be served upon him in writing within 10 days, he shall notify the chief executive officer of the city, and the petitioners may then present such petition and proposed ordinance to and file the same with the chief executive officer of the city, who shall, within 10 days after the holding of said petition and ballot title to be sufficient, call a special election at which he shall submit the question of whether or not such proposed franchise shall be granted, extended, or renewed in accordance with the demands of such petition, and if at said election a majority of said electors voting thereon shall vote for the granting, extension, or renewal of such franchise, the same shall be granted by the proper authorities at the next succeeding regular meeting of the legislative body of the city. If an appeal is taken to the Supreme Court, it secures jurisdiction of the chief clerk of such city by virtue of the notice served as provided for by law, and on finding an initiative or referendum petition sufficient it may by its own mandate compel such officer to comply with the statutory requirements. The appeal from a de-

cision of the chief clerk of a city to the Supreme Court under the provisions of section 6631, C. O. S. 1921, is a transference of the proceedings to this court for a trial de novo, and it has jurisdiction to hear and determine the same. In re Initiative Petition No. 23, State Question No. 38, 35 Okla. 49, 127 P. 862.

It is contended by the protestants that the parties submitting such proposed franchise ordinance failed to prepare and file one copy of the ballot title with the city clerk and one copy with the attorney for the municipality as required by section 6632, supra. That section provides, among other things, that:

"When any measure is proposed by initiative petition, whether as an amendment to the Constitution or as a statute, it shall be the duty of the parties submitting such proposition to prepare and file one copy of the same with the Secretary of State and one copy with the Attorney General, such copies to contain a ballot title of not exceeding 100 words, which shall contain the gist of the proposition without any argument or statement either for or against such measure"

—which, construed in connection with section 6647, would require such proposed initiative petition and franchise ordinance and ballot title to be filed with the city clerk and attorney for the municipality. However, it will be noted that the language of the statute is, "When any measure is proposed by initiative petition." The query then is, when is the measure proposed? One definition given in Webster's New International Dictionary is, "To offer for consideration, discussion, acceptance or adoption." "Proposed" is synonymous with "offer," "present." Hence, the franchise ordinance cannot be proposed until the sufficiency of the form is determined in the first instance by the city clerk and in the event of appeal, by this court. So, the objection upon that issue is answered by the plain words of the statute that the franchise ordinance is not proposed until it is found to be sufficient in form, then the ballot title may be prepared in accordance with the statute.

The sufficiency of the ballot title is fully discussed by this court in Cress v. Estes, 43 Okla. 213, 142 P. 411; In re Referendum Petition No. 30, State Question No. 94, 71 Okla. 91, 175 P. 500; Ramsey v. Persinger, 43 Okla. 41, 141 P. 13. Under the plain language of the statute and the former decisions of this court we see no good reason why the parties should have any trouble in agreeing upon a ballot title. If the parties cannot agree upon the ballot title, either party may appeal to this court and we will perform our duty and settle that issue.

Our attention has been called to Mayor and Councilmen of the City of Pawhuska v. Pawhuska Oil & Gas Company, 28 Okla. 563, 115 P. 353; Lowther v. Nissley, 38 Okla. 797, 135 P. 3; In re Springer, In re Incorporated City of McAlester, 75 Okla. 118, 182 P. 713; In re Initiative Petition No. 1, City of Hominy, 113 Okla. 6, 237 P. 460; In re Referendum Petition No. 3, City of Claremore, Mendenhall v. Harrison, 85 Okla. 117, 205 P. 133. We are of the opinion that the views herein expressed are in harmony with the views of this court in Lowther v. Nissley, supra, and do not in any way conflict with Mayor and Councilmen of City of Pawhuska v. Pawhuska Oil & Gas Co., supra. In that case the court said:

"Section 5b of article 18 of the Constitution, providing that after a franchise has been voted to be granted by a majority of the qualified electors voting thereon, the same shall be granted by the proper authorities at the next regular meeting of the legislative body of the municipality, imposes upon the mayor and councilmen a mandatory ministerial duty."

That case was filed when section 18 of chapter 44 of the Session Laws of 1907-08 was in force and required that the signatures to such referendum petition against any ordinance or resolution passed by the municipal legislative body shall be verified in the manner provided in section 4 of that act. The petition shall be filed with the executive officer within 30 days after the passage of such ordinance or resolution, and that portion of the opinion has no application to the case now under consideration. In Re Springer, supra, the appeal was dismissed for the reason that same was not commenced within time. The same is true relative to In re Initiative Petition No. 1, City of Hominy, Okla. In the case of In re Referendum Petition No. 3, City of Claremore, supra, a petition was filed in the office of the mayor of Claremore, Okla., purporting to contain the signatures of 383 legal voters of the city, the object of which was to invoke the referendum on ordinance No. 144. A protest was filed to said petition alleging that the same was not in form as required by law. The mayor sustained the protest and the petitioners appealed and this court held that the petition was sufficient. There was no question before the court in that case relative to the filing of a copy of an initiative petition and ordinance with the city clerk as a condition precedent to circulating the petition for signatures.

Protestants further complain of the initiative petition upon the ground that the electors signing the same request that the proposition of granting the franchise ordinance be submitted at a special city election to be held on the 28th of April, 1931. This contention is not tenable. Section 5b of article 18, supra, requires the chief executive officer to call a special election within 10 days after the initiative petition is filed with him, and this court in Looney v. Leeper, 145 Okla. 202, 292 P. 365, held that the request for an election on a special date was mere surplusage.

It is urged that the petitions are insufficient for the reason that the citizens and legal voters of Cushing, Okla., respectfully "order" that the proposed ordinance be submitted to the qualified electors of Cushing, Okla., for their approval or rejection, instead of using the word "demand" that the proposition be submitted. This, in our opinion, is just a play on words and whether the word "order" or the word "demand" appeared in the petition would be immaterial. The issue in the first instance is for the chief clerk to determine, and on appeal for this court to determine, whether or not the petition is sufficient in form, and when he has determined this question or the same has been determined on appeal and a ballot title has been approved and the chief clerk notified of that fact, it is his duty to so advise the chief executive officer, and thereafter when the petition is presented to the chief executive officer under the procedure provided for in the Constitution and the statutes enacted to carry the constitutional provisions into force, it is the mandatory duty of the chief executive officer of the city to call the election, and give notice thereof as required by section 5a of article 18 of the Constitution.

It is also contended by the protestants that the proposed franchise ordinance was not submitted to the board of commissioners of Cushing, Okla., as provided in the amendment to the charter adopted at an election on April 7, 1931, and approved by the Governor on the 15th day of April, 1931. The protestants seem to overlook the fact that the people reserved to themselves the power to propose franchise ordinances independent of the board of commissioners of a city operating under a charter form of government, or of a city operating under a council form of government. When any citizen or citizens desire to propose a franchise ordinance under section 5b of article 18 of the Constitution, it is their duty to draft the same in accordance with the provisions of the Constitution and general laws of the state and

valid provisions of a city charter, but such persons are not required under the Constitution to submit a proposed franchise ordinance to the board of commissioners of a city operating under a charter or city incorporated under the general laws of the state relating to the incorporation of cities, for it to offer amendments to the same. The petitioners and city commissioners may agree upon the terms of a franchise under section 5a of article 18 and such franchise may be submitted for approval or disapproval as provided in said section.

It is urged by the protestants that the petitions are insufficient in form—that they are repugnant to section 11 of article 1 of the charter, which reads as follows:

"Every grant, extension or renewal of a franchise or right for public utility or public service, shall provide, and there shall be embodied therein, that the city shall, at all times during the existence or continuance of such franchise, have the right and power to purchase the physical property and equipment of such utility then in service or use in said city, at the then value of such physical property and equipment at the time of the election of said city to purchase the same, and take over the property and plant of the grantee in whole, or in part, and any violation of this provision shall operate as a forfeiture of each and all such franchises, privileges, and easements."

Section 14 of the proposed franchise is as follows:

"Section 14. The city of Cushing at all times during the existence or continuance of this franchise, shall have the right and power to purchase the physical property and equipment of the grantee, its successors or assigns, then in service or in use in said city at the then value of such physical property and equipment at the time of the election of said city to purchase the same, and shall have the right and power to take over the property, equipment, and plant of the grantee, in whole or in part, all as provided in the charter of the city of Cushing. Three engineers will be selected, one designated by the city of Cushing, one designated by the grantee, and the third to be selected by the above two engineers, to determine the physical value of said property and equipment. The value determined and agreed upon by these three engineers shall be accepted by the grantee as the sale price and by the city of Cushing as the purchase price for said property and equipment then owned and operated by the grantee in the said city of Cushing, Okla."

The objection is made to the franchise providing the manner of determining the physical value of the property in the event the city elects to take the same during the lifetime of the franchise. We fail to see where this section of the franchise is in conflict with the section of the charter above quoted. It grants to the city of Cushing the right to take over the franchise and provides how the physical value of the property may be determined, the charter being silent on the procedure whereby the city may take over the light plant. We know of no good reason why the parties to the franchise may not agree upon the procedure in the franchise when the same does not conflict with the Constitution or general laws of the state, or terms of the charter, and the manner provided for the city taking over the light plant is just, fair, and reasonable, as it appears to be in this case.

It is next contended that the franchise does not contain a material portion of article 1, section 8-A, of the charter. This amendment to the charter was adopted after the petitions were circulated by the petitioners and filed with the chief clerk of the city of Cushing. It seems to be a well-settled rule of law in this state that laws existing at the time and place of making a contract enter into and form a part thereof, the same as though copied therein, including those affecting its validity, construction, discharge, and enforcement. Adams v. Thurmond, 48 Okla. 189, 149 P. 1141; Farley v. Board of Education of City of Perry, 62 Okla. 181, 162 P. 797; Oklahoma Cotton Growers Ass'n v. Salyer, 114 Okla. 77, 243 P. 232; Knight v. Clinkscales, 51 Okla. 508, 152 P. 133; Cunningham v. Wheat Growers Ass'n, 120 Okla. 19, 250 P. 71. Counsel for petitioners in their brief upon this issue state:

"The grantee of this franchise will take it subject to all limitations and restrictions imposed by the Constitution, the statutes and the charter."

This seems to be in harmony with the decisions of the state courts and the Supreme Court of the United States relative to franchises. Trustees of Freeholders & Commonalty of Town of Southampton v. Jessup (N. Y.) 56 N. E. 538; Bank of Augusta v. Earle, 38 U. S. (13 Pet.) 519, 595, 10 L. Ed. 274; California v. Central Pac. R. Co., 127 U. S. 1, 32 L. Ed. 150; Fletcher v. Peck, 10 U. S. 87, 3 L. Ed. 162. However, the constitutionality or validity of a proposed or initiated measure cannot be determined on a hearing before the chief clerk of a city. In re Initiative State Question No. 10, 26 Okla. 554, 110 P. 647. We are not deciding that question until it is properly before the court.

Having arrived at the conclusion that the chief clerk and not the chief executive officer must determine the sufficiency of the petitions, ordinarily we would dismiss the cause without declaring the law relative to the duties of the chief clerk, but this case has been ably briefed by counsel for the respective parties and they have requested us to declare the rule of law relative to the procedure in such matters, and as counsel for each party seems to be in doubt as to the correct construction to be placed upon the several sections of the Constitution and statutes hereinbefore referred to, and realizing that like confusion may arise relative to other petitions of a similar nature, we feel it our duty, and we have attempted to state clearly the procedure from the circulation of petitions to the hearing in this court on appeal in the event either party appeals. The statutory provisions for procedure in initiative franchise matters, the same as upon other initiative petitions, were enacted to vitalize and put into effect the constitutional provisions, and provide for a speedy determination of the question involved so the qualified electors may vote upon the proposition. That it is necessary in initiative and franchise matters to first run the gauntlet of the statutory procedure in order to prevent fraud or corruption in procuring franchises appears clear from the provisions in the Constitution and the statutes, and the chief clerk of the city is authorized and empowered to determine the sufficiency of the petitions before the same are to be submitted to the mayor or chief executive officer of the city, and before he is required to call an election thereon. Under the statutes vitalizing the constitutional provisions authorizing and directing the granting of franchises under certain conditions and to prevent fraud and corruption in procuring a franchise, the petitioners must prepare their initiative petition and have the same signed and then file the same with the city clerk, not the mayor, for action by him in accordance with section 6631, C. O. S. 1921. Under the provisions of said section of the statutes the city clerk, not the mayor or other chief executive officer, shall conduct a hearing and shall decide whether such petition be in form as required, and his decision shall be subject to appeal to the Supreme Court of the state. If the city clerk decides the initiative petition is sufficient or insufficient, an appeal may be made from his decision to the Supreme Court by serving notice upon the chief clerk of the city in writing of such appeal, and the appeal from the decision of the chief clerk of the city to

the Supreme Court under the provisions of section 6631, C. O. S. 1921, is a transference of the proceedings to this court for trial de novo, that is, a trial the same as though no hearing had been had before the chief clerk of the city, and this court has jurisdiction to hear and determine the same, and it may by its own mandate compel said officer of the city to comply with the statutory requirements. The initiative petition is not to be filed with the mayor until its sufficiency has been determined in accordance with the statutory procedure before the city clerk. When the city clerk, either upon his own judgment or upon the mandate of the Supreme Court, shall determine that the initiative petition is sufficient, he shall notify the mayor or other chief executive officer of that fact, and the petitioners then for the first time present the initiative petition to the chief executive officer of the city, and it becomes the duty of the chief executive officer then to call an election and proceed under the provisions of the Constitution hereinbefore set out. Sections 5a and 5b of article 18; 5a under such circumstances only relating to the time the notice is to be given. The duty there imposed upon the mayor by the Constitution is administrative and mandatory. Upon his failure to call an election petitioners may compel him to do so by commencing in a court of competent jurisdiction an original action in mandamus for that purpose.

It also appears from the pleadings and the brief that the parties to this action are in doubt as to the proper custodian of the initiative petitions involved in this action. As stated, we are of the opinion that the chief clerk of the city is the proper custodian of all papers and documents relating to such petitions until the sufficiency thereof is determined, and that then they should be transmitted by the chief clerk or the parties to the chief executive officer together with the certificate of the chief clerk showing he has found said initiative petitions sufficient in form, and then the chief executive officer shall, upon 30 days notice, call the election. The chief clerk of Cushing, Okla., not being a party to this action and it appearing that the sufficiency of the petitions has not been determined by him, all papers and documents relating to such petitions and said original petitions brought into this court by order are hereby ordered returned by the clerk of this court to the chief clerk of Cushing, Okla., that he may determine the sufficiency thereof, and any party authorized by law may appeal from

his order and findings to this court in the manner authorized by the statute hereinbefore cited.

We have declared the law in this case in order to clarify the procedure relative to such matters, but the city clerk not being a party to this proceeding and not having determined the sufficiency of the petitions, we do not have jurisdiction to grant the petitioners, styled plaintiffs in error, the relief prayed, but owing to the importance of the issues and to prevent further delay, we have declared the law in the case that all parties may be fully advised of their rights.

For the reasons stated, the prayer of the petition of the petitioners requesting this court to exercise a superintending control over the chief executive officer of Cushing, Okla., is denied.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, and CULLISON, JJ., concur. McNEILL, J., concurs in result. KORNEGAY, J., dissents.

ANDREWS, J. I concur in the conclusion, but I do not concur in the law announced. In my opinion sections 4 (a) to 4 (e) of article 18 of the Constitution relates to the initiative and referendum and sections 5 (a), 5 (b) of that article relate to franchises. I think that different things are considered and different procedure provided by the two sections. In my opinion the procedure for the initiative and referendum is not applicable to franchises.

----

KORNEGAY, J. (dissenting). I am not able to agree that this court has jurisdiction of this proceeding in error. At one time appellate jurisdiction in connection with initiated measures in cities was conferred upon district courts. This provision was specially repealed by the provisions of chapter 66 of the Session Laws of 1910, page 121, and since that time no provision has been made for an appeal in city initiated matters. It seems to me that when the parties themselves think they are proceeding by petition in error, this court should not, of its own motion, change the proceedings into an original proceeding, as is done here. It seems to me that if any court has jurisdiction to review the clerk's action, it is the district court in the county in which Cushing lies, and by original proceeding in mandamus.

Note.—See under (1) 6 R. C. L. 650; R. C. L. Perm. Supp. p. 1599. (3) 25 R. C. L. 999; R. C. L. Perm. Supp. p. 5639.