2014 OK CIV APP 94

**In re CITY OF McLOUD INITIATIVE PETITION 2010–2 DE–ANNEXATION,**

**Thomas Morris, Appellant,**

**v.**

**A. Kay Heinz, City Clerk of McLoud, Oklahoma, Appellee.**

**No. 110204.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 20, 2014.

Rehearing Denied Aug. 13, 2014.

Certiorari Denied Nov. 17, 2014.

J. Kelly Work, Oklahoma City, Oklahoma, for Appellant.

Michael Phelan Warwick, Michael P. Warwick, Inc., Shawnee, Oklahoma, for Appellee.

Wm. C. HETHERINGTON, JR., Vice–Chief Judge.

¶1 Thomas Morris (Morris) appeals an order of the trial court sustaining the finding of McLoud's city clerk, A. Kay Heinz (Clerk), that McLoud Initiative Petition # 2010–2 (the Petition) was insufficient. We conclude the Petition is an untimely referendum, it violates constitutional due process of the landowners in the area proposed for de-annexation, and is not the proper method to achieve the de-annexation sought. The order sustaining Clerk's finding of insufficiency is AFFIRMED.

## FACTS

¶2 A number[1] of initiative petitions, including Initiative Petition # 2010–2 (the Petition), which is the subject of this appeal, were pre-filed with the City Clerk (Clerk) of McLoud (City) on July 28, 2010. The Petition seeks de-annexation of thirty tracts comprising approximately 15 square miles of City and contains legal descriptions of the tracts, a map, and a copy of a platted area. The proposed change would result in City reverting to the area originally platted in 1895 as a town.

¶3 The original ballot title filed by the proponents of the Petition states:

This measure de-annexes all that land area currently in the City of McLoud that was previously annexed to the Town, now City, of McLoud. Passage of this measure will restore the city to include only the geographical area that was originally platted as the Town of McLoud. [sic] with the outer boundaries being Pittman Ave. on the north, C.R.I. & P.R.R. on the east except that Block 1 is east of the railroad at the intersection of Pittman Ave. and Third St., the south line of Section 9 T11N

R2E on the south, and Ninth St. on the west.

¶4 The Petition and signatures of those supporting the measure were filed with Clerk on October 19, 2010. The proposed ballot title for the Petition was reviewed by City's attorney, who drafted a new ballot title. This new ballot title, published in a legal notice on October 29, 2010, states:

This measure de-annexes all land annexed by the City of McLoud since its founding, including all McLoud Public Schools, all City water wells, Waste Water Treatment Plant, McLoud Cemetery, Mabel Bassett Prison, Wes Watkins Reservoir, and all homes and land South of Oklahoma Street or West of Ninth Street. This measure proposed de-annexation without the consent of the owners of such property, without notice to the owners of such property, and without following the statutory procedures designed to protect the rights of property owners. De-annexation will deny the owners of such property the right to vote in municipal elections, and the right to receive city services such as police protection, fire, water, sewer and street maintenance. Owners of de-annexed property are liable to the City for the cost of public improvements on their property.

¶5 The notice advises "that on October 20, 2010 the City Attorney determined that the ballot title in the above referenced Initiative Petition was not in legal form and in harmony with the law," and that City's attorney had prepared the ballot title published in the October 29, 2010 notice. The October 29, 2010 Notice advises that "[a]ny qualified elector" of City may appeal the ballot title within ten days of the notice by filing an objection with the District Court of Pottawatomie County, Oklahoma and serving notice of the appeal upon Clerk "and the persons that prepared the ballot title." The October 20, 2010 notice also contains the following statement: "The City Clerk has not yet determined the sufficiency or insufficiency of

---

1. Appeals relating to this group of initiative petitions were filed in cases docketed as Case Numbers CIV–2010–104 and CIV–2010–107, which were consolidated for hearing. Case No. CIV–2010–7, in which the parties raised issues re-

garding McLoud Initiative Petitions 2010–4 though McLoud Initiative Petition 2010–8, later was partially dismissed. The issues presented in this appeal arise solely from determinations regarding McLoud Initiative Petition 2010–2.

McLoud Initiative and Referendum Petition #. 2010–2."

¶ 6 Clerk published notice in the November 20, 2010 edition of the Shawnee News–Star newspaper stating the Petition has sufficient signatures, and "[t]he time for objecting to the City Attorney's proposed Ballot Title has expired." However, she determined the Petition is "insufficient" for the following reasons:

a. Although denominated as a Petition for Initiative, the Petition is in reality an impermissible attempt to dissolve the City of McLoud without complying with statutory requirements.

b. The Petition for Initiative creates a default regarding contracts of the City of McLoud and violates Article 2, Section 15 [2] of the Oklahoma Constitution.

c. The proposed Petition for Initiative violates the due process and property rights of the persons owning property within the areas to be de-annexed, and violates Article 2, Section 7 [3] of the Oklahoma Constitution.

d. Although denominated as a Petition for Initiative, the Petition is in reality an impermissible attempt to hold a Referendum on previous annexation ordinances long after the 30 day time limit to petition for referendum has expired.

e. Although a timely filed referendum on the de-annexation of certain discrete property by a municipality has been approved by the courts, the attempt to destroy a city by "de-annexation" is not a power reserved to the people by way of initiative petition. (Footnotes added.)

¶ 7 Morris filed a Protest to Clerk's Finding of Insufficiency in the District Court of Pottawatomie County on November 30, 2010, claiming the City Attorney's ballot title published on October 29, 2010, "is slanted to the point it does not now meet the requirements of statutes," and it "appears to contain erroneous information." Morris's Protest notes Clerk published findings of insufficiency on November 20, 2010, and asks the trial court to determine if the Petition "is in form required by law," citing 11 O.S.2011 15–104.[4] Morris filed a Motion to Find Initiative Petition 2010–2 Sufficient on December 8, 2010. Clerk filed a response to Morris's Protest and to his motion to find the Petition sufficient, both parties filed trial briefs, and the trial court conducted a hearing on October 25, 2011. The trial court entered an order recounting how sworn testimony, stipulations, and arguments of counsel were received and sustaining Clerk's finding the Petition was insufficient.

## THE APPEAL

¶ 8 At the outset, we note there is no dispute concerning the *number* of signatures necessary for the Petition. Clerk has stated the total obtained is sufficient. The challenge to Clerk's finding of insufficiency, on

**2.** *In toto*, this section provides: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties."

**3.** Which section provides: "No person shall be deprived of life, liberty, or property, without due process of law."

**4.** This section provides:
A. When signed copies of a petition are timely filed with the clerk, the clerk shall make a physical count of the number of signatures appearing on the petitions. He shall then publish, in at least one (1) newspaper of general circulation in the municipality, a notice of the filing and the apparent sufficiency or insufficiency of the petition. The notice shall also state that any qualified elector of the municipality may file a protest to the petition or an objection to the count made by the clerk.
B. A protest to the petition or the count of signatures shall be filed in the district court in the county in which the situs of the municipality is located within ten (10) days after the publication. Written notice of the protest shall be served upon the clerk and the parties who filed the petition. In the case of the filing of an objection to the count, notice shall also be served upon any party filing a protest. The district court shall fix a day, not less than ten (10) days after the filing of a protest, to hear testimony and arguments for and against the sufficiency of the petition. A protest filed by anyone, if abandoned by the party filing it, may be revived within five (5) days by any other qualified elector. After the hearing, the district court shall decide whether such petition is in form required by law.

grounds other than the number of signatures, was timely filed within ten days of the November 20, 2010 notice. Although several cases have addressed use of the referendum process in the context of de-annexation of municipal territory, we agree with Clerk that this controversy presents a matter of first impression whether the initiative process also may be used to de-annex the subject territory.

¶9 Morris argues the trial court's order improperly deprives the people of McLoud of the power of initiative in violation of Okla. Const. art. 18, § 4(a) and 11 O.S.2011 15–101, improperly considers the wisdom rather than the legality of the Petition, and applies "an overly technical construction to deny the Petition." Morris claims the trial court failed to enter a finding the Petition "clearly and manifestly" violates either the Oklahoma Constitution or United States Constitution and, in the absence of such a finding, improperly declares the Petition invalid in advance of a vote of the people.

¶10 The trial court's order sustaining Clerk's determination does not contain specific findings of fact or conclusions of law, and there is no allegation such were requested. Morris alleges the trial court "may have improperly determined" the de-annexation was not a proper subject for an initiative petition, as it "would result in the impairment of a contract without a clear showing thereof" and it would violate due process rights of the persons in the areas de-annexed. Morris also contends the trial court "may have improperly determined" the Petition was "an impermissible attempt to dissolve the City of McLoud" and was "an impermissible attempt to hold a referendum on previous annexation ordinances."

¶11 The duty of a city clerk is to determine, in the first instance, if a petition "is sufficient in form." *See, In re Initiative Petition No. 2 of Cushing*, 1932 OK 124, ¶37, 157 Okla. 54, 10 P.2d 271, 281. "Those who challenge the validity of actions of public officials apparently within their statutory powers, must carry the burden of demonstrating such invalidity." *U.C. Leasing, Inc. v. State ex rel. State Bd. of Public Affairs*, 1987 OK 43, ¶24, 737 P.2d 1191, 1196.

¶12 Morris contends some of Clerk's given reasons for the determination the Petition is insufficient are premised on speculation regarding practical problems the City of McLoud might face if the areas described were de-annexed and contends these speculations are not support for a finding the Petition is legally insufficient, *i.e.*, Clerk's claim the Petition is insufficient because it seeks to "dissolve" or "destroy" the City of McLoud. Morris argues these claims are not borne out on the face of the Petition, which indicates the de-annexation sought includes only areas added since the municipality's founding and the original area of the City of McLoud, which was formerly a town, will be preserved. While it is true a reduced land area might pose political and economic difficulties for a municipality *if* the initiative were adopted by voters, the issue for resolution at this juncture is whether the Petition clearly and manifestly contains *legal* insufficiencies.

¶13 As the Court explains in *In re Initiative Petition 362, State Question No. 699*, 1995 OK 77, ¶12, 899 P.2d 1145, 1151:

The right to pass legislation and change the Constitution through the initiative process is a fundamental right of the people and must be jealously guarded. Our Constitution provides, "the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature." Okla. Const. Art. V. 1. All doubt as to the construction of a proposed initiative "is to be resolved in favor of the initiative." *In re Initiative Petition No. 348, State Question No. 640*, [1991 OK 110, ¶5,] 820 P.2d 772 (Okla. 1991). Thus, unless Protestants can show that this Initiative clearly and manifestly violates either the Oklahoma or United States Constitution, the Initiative is legally sufficient.

¶14 Constitutional issues present questions of law. *Malloy v. Caldwell*, 2011 OK CIV APP 26, ¶11, 251 P.3d 183, 185. We review the trial court's decisions on questions of law *de novo* and without deference to the trial court's decision. *Lee v. Bates*, 2005 OK 89, ¶4, 130 P.3d 226, 228.

¶ 15 In *In Re: De-annexation of Certain Real Property from the City of Seminole*, 2004 OK 60, ¶¶ 10–11, 102 P.3d 120, 125–126, in a subsection entitled "An Alteration of Municipal Boundaries Is Accomplished By The Exercise Of A State Sovereign Power That Has Been Delegated to Municipalities," the Oklahoma Supreme Court explains

> There is only one sovereign power in state government. The exercise of that power in Oklahoma is through the State Legislature. Municipalities are political subdivisions of the State. Their governmental activities—executive, legislative and judicial—must conform to both the mandates of the State's constitution and to the general laws upon matters of statewide interest. The power to alter local governmental boundaries falls solely within the State's plenary authority. The State Legislature has conferred the annexation power upon municipalities *to be exercised in conformity to the Oklahoma Municipal Code.*

(Footnotes omitted; emphasis added.)

¶ 16 In the Oklahoma Municipal Code, the Legislature has provided the procedure for detachment of municipal territories in 11 O.S. 2011 21–110:

A. Territory may be detached from the corporate limits of a municipality by the governing body when:

1. An ordinance of the governing body so directs; or

2. *A petition requesting detachment, signed by at least three-fourths (3/4) of the registered voters and by the owners of at least three-fourths (3/4), in value, of the property to be detached, is filed with the governing body.*

Only land which is within the limits of the municipality and upon its border and not laid out in lots and blocks, or land which had been annexed to a municipality, may be detached by petition.

B. Petitioners for detachment of municipal territory shall comply with the following procedures:

1. *A true and complete unsigned copy of the petition requesting detachment shall be filed with the clerk of the municipality before it is circulated and signed by at least three-fourths (3/4) of the registered voters and by the owners of at least three-fourths (3/4), in value, of the property to be detached, as required by subsection A of this section;*

2. Signed copies of the petition requesting detachment shall be filed with the clerk of the municipality within ninety (90) days after the initial filing of the unsigned copy with the clerk; and

3. Notice of the filing of the signed petition requesting detachment with the clerk of the municipality shall be given in the same manner provided for petitions requesting annexation.

Failure to comply with the notice requirement or the other procedures set forth in this subsection shall render the petition for detachment insufficient and no action thereon shall be required by the clerk or governing body of the municipality.

C. *When signed copies of the petition requesting detachment are timely filed with the clerk of the municipality, the clerk shall determine the sufficiency of the signatures appearing on the petition.* The clerk shall then publish, in at least one newspaper of general circulation in the municipality, a notice of the filing and the apparent sufficiency or insufficiency of the petition. Within ten (10) days following the publication, the governing body of the municipality shall hold a public hearing on the petition requesting detachment and take such action thereon as the governing body deems appropriate, which may include approval, denial, or deferral.

D. Appeal to the district court concerning any action by the clerk or governing body of the municipality on a petition requesting detachment shall be in the same manner provided for petitions requesting annexation.

(Emphasis added.)

As the Oklahoma Supreme Court states in *In Re: Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, ¶ 16, 142 P.3d 400, "We cannot undervalue the Oklahoma Constitutional right of initiative, but we also may not ignore our constitutional duty to ensure that in the exercise of the right of initiative,

the provisions of the Constitution are adhered to." (Footnote omitted.) However, the Court also has determined, in Initiative Petition *In re No. 349, State Question No. 642,* 1992 OK 122,[5] 838 P.2d 1, 8, that "A PRE–SUBMISSION DETERMINATION OF THE CONSTITUTIONALITY OF THE INITIATIVE PETITION IS APPROPRIATE AND NECESSARY WHERE THE PROPOSAL IS FACIALLY UNCONSTITUTIONAL AND IS JUSTIFIED WHEN A COSTLY AND FUTILE ELECTION MAY BE AVOIDED." (Capitalization in original.) Indeed, the Court goes on to comment that "if a properly preserved constitutional challenge is leveled at a proposed law and a ruling on the issue would prevent a useless election resulting in the enactment of an unconstitutional statute, this Court has the authority, as well as the responsibility, to decide the matter." *Id.* ¶ 18, 838 P.2d at 8.[6]

¶ 17 The Legislature has adopted a statutory process for removing territory from municipalities which is limited to "[o]nly land which is within the limits of the municipality and upon its border and not laid out in lots and blocks, or land which had been annexed to a municipality" and which requires "[a] petition requesting detachment, *signed by at least three-fourths (3/4) of the registered voters and by the owners of at least three-fourths (3/4), in value, of the property to be detached.*" (Emphasis added.) This is not the initiative petition process, under which fifty percent plus one voter of a municipality *at large, i.e.,* not limited to those residents of the territory proposed for detachment, could detach territory from a municipality via use of the initiative. Use of an initiative petition under the circumstances here is inconsistent with the legislative intent embodied in the Oklahoma Municipal Code and fails to protect due process rights of the affected property owners. The statutory process, not the initiative process, is the de-annexation method consistent with protection of constitutional rights. Morris has failed to comply with this applicable statutory process.

¶ 18 Further, the process advocated by Morris is, effectively, an end run against longstanding prior annexations and, effectively, *not an initiative petition* but instead is an untimely referendum. Any referendum regarding an ordinance or resolution is due within thirty days of passage of the ordinance or resolution. 11 O.S.2011 15–103 C. We agree with Clerk that the Petition seeks to undo previously passed ordinances or resolutions and is, effectively, an untimely referendum.

### CONCLUSION

¶ 19 The Legislature has provided a statutory method for the detachment of municipal territories. Although only one reason is enough for a determination of insufficiency, Clerk has identified two proper grounds for finding the Petition insufficient: (1) it is a clear and manifest violation of constitutional rights, and (2) it proposes what is effectively an untimely referendum. The order sustaining Clerk's finding of insufficiency is **AFFIRMED.**

JOPLIN, P.J., concurs.

KENNETH L. BUETTNER, Judge, dissenting.

¶ 20 Article 18, § 4(a) provides that the powers of initiative on referendum are reserved to the people of every municipal corporation with reference to all legislative authority which the municipality may exercise.

¶ 21 The Legislature has authorized the process by which territory of a municipality may be de-annexed. While the focus is on 11 O.S.2011 21–110(A)(2), which provides a petition process by persons living in the property sought to be de-annexed, the majority ignores 21–110(A)(1) which allows for de-annexation by an ordinance of the governing body. It would appear to me that if a city council may by ordinance, de-annex territory, then the people of the city, under their constitutionally reserved power of Article 18,

---

5. Cited text is the subheading preceding paragraph 16 of the opinion.

6. Citing this authority, this legal tenet was, more recently, made a part of the holdings listed in the

Order found at *In re Initiative Petition No. 395, State Question No. 761,* 2012 OK 42, ¶ 1, 286 P.3d 637.

§ 4(a), may seek enactment of such an ordinance by initiative petition.

¶ 22 In addition, it is not clear the initiative petition was facially unconstitutional. If it was, then all efforts to de-annex territory would suffer the same "insufficiency." Rather, the objections are more properly raised when and if the initiative petition becomes law and is applied.

¶ 23 I respectfully dissent.