## ASSOCIATED INDUSTRIES OF OKLAHOMA et al. v. OKLAHOMA TAX COMMISSION.

No. 26835.   Feb. 18, 1936.

Keaton, Wells, Johnston & Barnes and Hayes, Richardson, Shartel, Gilliland & Jordan, for petitioners.

C. D. Cund, attorney for Oklahoma Tax Commission, C. W. King, A. L. Herr, and W. A. Dillon (Harve L. Melton and Wm. M. Franklin, of counsel), for respondent.

OSBORN, V. C. J. This is an original proceeding in this court instituted by the Associated Industries of Oklahoma, an unincorporated association, and 19 other taxpaying plaintiffs, against the Oklahoma Tax Commission, as respondents, for a permanent injunction to enjoin and restrain it from enforcing the provisions of Initiative Petition No. 144, State Question, 214, hereinafter referred to as the Old Age Pension Amendment to the Constitution.

The facts are undisputed. On August 13, 1935, there was filed with the Secretary of State approximately 9,000 pamphlets, with the original petition, purporting to have been signed by more than 180,000 legal voters of the state. Notice of the filing of said petition was caused to be published by the Secretary of State on August 19, 1935. On August 28, 1935, J. M. Ashton, a resident of Cleveland county, filed a written protest against the sufficiency of said petition. Immediately said protestant and a staff of clerical workers began an examination of the more than 9,000 pamphlets comprising said initiative petition, for the purpose of presenting evidence of fraud and irregularity in the form and contents of said petition. A hearing was conducted by the Secretary of State, and from time to time the hearing was deferred by the Secretary of State to enable protestant to complete said work of checking and to present testimony relative

to his charges of fraud and irregularity in said petition. Before said hearing had been completed, and before the Secretary of State had taken any official action determining the sufficiency or insufficiency of said petition, Honorable E. W. Marland, Governor of the State of Oklahoma, on September 17, 1935, issued an executive order and proclamation ordering and directing that said initiative petition be submitted to the people of the state for ratification · or rejection at the special election which had theretofore been called to be held on September 24, 1935. On said date, and before the Secretary of State had concluded the hearing as to the sufficiency of the petition, said initiative petition was submitted at the election, 204,522 votes being cast for the proposition and 78,783 votes being cast against it. On October 2, 1935, the Governor issued a proclamation setting forth the result of the election and declaring the initiative measure duly adopted as an amendment to and a part of the Constitution. The Secretary of State continued after the election to conduct the hearing as to the sufficiency of the petition. After the date of the election and after the date of the proclamation of the Governor and on October 24, 1935, the Secretary of State found and held that the initiative petition was sufficient in form and was signed by the requisite number of legal voters, from which finding and holding protestant appealed to this court. But thereafter, and before this court had adjudicated the issues, protestant asked leave of this court to dismiss said appeal, which was granted and the appeal dismissed. It further appears that the Secretary of State has never certified to the Governor the sufficiency of the initiative petition.

On August 13, 1935, the date of the filing of the pamphlets containing the initiative petition and the names of the purported 180,000 signers, the proponents of the amendment filed with the Attorney General a copy of the proposed amendment as set forth in the petition, together with a proposed ballot tit e (said ballot title being the same as contained in the printed petition), and requested the Attorney General to adopt or correct the proposed ballot title. The Attorney General refused at that time to pass upon said ballot title on the ground that the request was prematurely made in that the Secretary of State had not passed upon the sufficiency of the petition. On October 24, 1935, after the Secretary of State had found and held the petition was sufficient in form,

proponents made a second request of the Attorney General for a ballot title. The Attorney General never certified as to the sufficiency of the ballot title; but the measure was submitted to the people on the ballot title prepared and presented by the proponents thereof.

From the view we have taken of the determinative legal questions involved herein, the detailed provisions of said initiative measure are immaterial; but a brief resume of the specific provisions will be helpful in consideration and discussion of the fundamental legal questions on which our conclusion herein must be predicated. We shall, therefore, as briefly as possible, allude to the various provisions.

The title to the act, which was likewise used as the ballot title for the submission of the measure to the people at the election, is as follows:

"Act amending the Constitution of the State of Oklahoma by adding at the end of article XXIII thereof sections 12 and 13; authorizing old age pensions and social security legislation; creating a commission to be known as 'Commission for Old Age Pensions and Security'; authorizing the levying and collecting of necessary taxes therefor; making appropriation for the purposes thereof; declaring State Question 209, Referendum No. 67, and vote thereon, of no force or effect; prescribing powers and duties of certain officers and employees; providing for appeals from orders and rulings; and fixing penalties for violations of this act."

Section 1 is in part as follows:

"Section 1. The Constitution of the State of Oklahoma is hereby amended by adding at the end of article XXIII thereof two sections, to be sections 12 and 13, as follows:

"Section 12. For the purpose of rendering aid, care, relief and assistance to certain persons, who by reason of their age or disability are unable to provide for themselves, and to encourage the maintenance of homes with their attending benefits to the cause of good government, peace and security, legislation shall be enacted for old age pensions and for social security, and there is created a commission to be known as 'Commission for Old Age Pensions and Security', which shall be composed of three members, namely, the Commissioner of Labor, who shall be chairman thereof and who shall serve without additional compensation and two members who shall be appointed by the Governor, each of whom shall receive ten (10.00) dollars per day for each day they render services as members of the commission.

"Necessary fees and taxes shall be levied and collected to carry out the purpose of this amendment, including graduated or other privilege taxes, graduated or other land taxes, graduated or other income taxes, graduated or other inheritance taxes, and other taxes or fees which may be deemed necessary."

That portion of section 1 of the amendment which is designated as "section 13" is a far-reaching and comprehensive enactment which provides that **"until otherwise provided by law"** the Commission for Old Age Pensions and Security shall pay out of funds provided for such purpose the sum of $30 per month, payable monthly, to each male above 60 years of age, and each female above 55 years of age, who is a citizen of the United States, and has resided in the state of Oklahoma for 5 years or more within the last 10 years preceding the date of an application for assistance hereunder, and who is not an inmate of a public or charitable institution and **who does not have sufficient income** (together with that of his or her spouse) to provide a reasonable sustenance compatible with decency and health. Said section 13, in its various subdivisions, thereupon imposes various and sundry taxes upon various and sundry businesses and transactions and upon the right to engage in various and sundry businesses, and includes gross income taxes, sales taxes, transaction taxes, licence taxes, privilege taxes, service taxes, and many other and divers taxes against many persons, firms, and businesses which heretofore had not been so taxed. In fact, section 13 makes a very comprehensive levy of taxes for the purpose of providing funds to carry out the provisions of this measure. To illustrate the far-reaching consequences of the act, it was asserted on oral argument herein that the enactment would require the expenditure of between twenty and forty million dollars of public funds annually, and the consequent raising thereof by taxation. This large requirement is immaterial in the determination of the question involved, but it serves strikingly to call attention to the importance of adherence to the fundamental principles in the enactment of laws which we shall hereinafter discuss.

Courts do not concern themselves with the expediency or wisdom of laws, but only with their legality. The social and economic policies affecting the general welfare of the people are committed exclusively to the legislative branch of government, and by our fundamental concept of government the judiciary is not permitted to interfere therewith

except in so far as the legislation may transgress fundamental legal restrictions. The chief executive may recommend, and the Legislature may enact, or the people, exercising their reserved powers, may initiate and approve at the polls any legislation they may deem advisable. But in order to safeguard and protect and enforce any and all restrictions placed upon the legislative power by the Constitution adopted by the people, it is for the courts, when their jurisdiction has been properly invoked, to inquire into and guard carefully the manner in which such legislation is enacted. It must be remembered that the people solemnly adopted a Constitution containing certain restrictions, not only against its delegated officers and its established departments, but also upon the people themselves, to the end that the Constitution should be perpetually maintained and upheld. Subject to the limitations imposed by the Federal Constitution, the reserved power of the people of the state to amend their Constitution is unlimited. But this power must be exercised in substantial conformity to the provisions of the Constitution itself. Courts can approve only those acts of the people which are in substantial conformity with the procedure provided by or under authority of the Constitution.

With this brief statement of fundamental principles as a foundation, we now proceed directly to the questions presented for determination. Petitioners have raised several separate questions, but we think the controlling and determinative question is: Was the amendment legally submitted to the people and adopted by them in conformity with the provisions of the Constitution; did the Governor have authority, prior to the completion of the hearing of the protest by the Secretary of State, and prior to his determination of the sufficiency of said petition, to submit said amendment to a vote of the people of the state?

We set forth the pertinent provisions of article 5 of the Constitution relating to the initiative and referendum.

"Section 1. The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

"Section 2. The first power reserved by

the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measures, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measures so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, and safety) either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinabove stated shall be based upon the total number of votes cast at the last general election for the state office receiving the highest number of votes at such election.

"Section 3. Referendum petitions shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of votes cast thereon and not otherwise.

"The style of all bills shall be: 'Be It Enacted By the People of the State of Oklahoma.'

"Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. **The Legislature shall make suitable provisions for carrying into effect the provisions of this article.**

"Section 4. The referendum may be demanded by the people against one or more items, sections, or parts of any act of the Legislature in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections, or parts of any act shall not delay the remainder of such act from becoming operative.

"Section 5. The powers of the initiative and referendum reserved to the people by this Constitution for the state at large, are hereby further reserved to the legal voters of every county and district therein, as to all local legislation, or action, in the administration of county and district government in and for their respective counties and districts.

"The manner of exercising said powers shall be prescribed by general laws, except that boards of county commissioners may provide for the time of exercising the initiative and referendum powers as to local legislation in their respective counties and districts.

"The requisite number of petitioners for the invocation of the initiative and referendum in counties and districts shall bear twice, or double, the ratio to the whole number of legal voters in such county or district, as herein provided therefor in the state at large. * * *

"Section 8. **Laws shall be provided to prevent corruption in making, procuring, and submitting initiative and referendum petitions.**"

It will be noted that while the Constitution provides the percentage of legal voters necessary to propose by petition an amendment to the Constitution, it does not provide specifically how and in what manner said signatures shall be procured, nor how verified, nor the form of the petition, nor whether or not all of the signers shall sign one petition, nor how the election shall be held, nor by whom, nor who shall determine whether or not said signers are legal voters, nor when such determination shall be made. It is to be noted, however, that in section 3 of said article it is provided that said petitions shall be filed with the Secretary of State "and addressed to the Governor of the state, who shall submit the same to the people." In the same paragraph of said section there are found mandatory provisions directed to the Legislature as follows: "The Legislature shall make suitable provisions for carrying into effect the provisions of this article." It is to be further noted that in the same article, section 8 provides: "Laws shall be provided to prevent corruption in making, procuring, and submitting initiative and referendum petitions."

It has been held by this court in several cases that the initiative and referendum provisions of the Constitution are not self-executing. Ex parte Wagner, 21 Okla. 33, 95 P. 435; Norris v. Cross, 25 Okla. 287, 105 P. 1000; Threadgill v. Cross, 26 Okla. 403, 109 P. 558; In re Initiative State Question No. 10, 26 Okla. 554, 110 P. 647; Atwater v. Hassett, 27 Okla. 292, 111 P. 802. It will

be observed that these decisions are early decisions of this court and have long been relied upon. It is seriously contended by respondents, however, that said decisions are erroneous and should be overruled, and that said initiative and referendum provisions of the Constitution are, in fact, self-executing, and being self-executing, the Governor could ignore the absence of a finding of sufficiency of the Secretary of State, and other steps required by statutes for submitting said amendment to the people.

We do not deem it necessary to enter upon an extended discussion of the essential qualities of constitutional provisions which are self-executing, and of those which are not, nor to determine specifically whether or not said provisions are self-executing. The Legislature of 1907-08, pursuant to the mandatory duty specifically set out in said article, enacted comprehensive provisions for carrying into effect the constitutional mandate relating to the initiative and referendum, and provisions designed to provide an orderly procedure and to prevent corruption in making, procuring, and submitting such petitions. (S. L. 1907-08, ch. 44, art. 1.) By said statutory enactments the Legislature provided the form of the petition (sections 5867, 5868, O. S. 1931); provided for the securing of signatures on "pamphlets" containing a copy of the initiated measure, with 20 signers to each "pamphlet," and for a bold warning to the signers that they were committing a felony if they signed thereto any name other than their own or if they signed without being legal voters or if they knowingly signed more than once for each measure (section 5869, O. S. 1931); that each sheet of such petition containing signatures should be verified before a proper officer by the circulators who obtained the signatures to the effect that each signer signed in the presence of the circulators, etc. (section 5872, O. S. 1931). By section 5874, O. S. 1931, it is provided that before a petition shall be circulated or signed the proponent shall file a true and exact copy of the proposed measure in the office of the Secretary of State, and that the completed petition containing the requisite number of signatures of legal voters shall be filed with the Secretary of State within 90 days after the filing of the true and exact copy above mentioned. It further provides that when the completed petition containing the signatures has been filed with the Secretary of State, the Secretary of State shall cause notice of such filing to be published in a newspaper of general circulation, and that any citizen within 10 days may by written notice protest against such petition, and the Secretary of State shall forthwith hear testimony and arguments for and against the sufficiency of such petition, and after said hearing the Secretary of State shall decide whether such petition be in form as required by the statutes, and his decision shall be subject to appeal to the Supreme Court. Such appeal is perfected by the serving of written notice upon the Secretary of State, whereupon the Secretary of State is required immediately to transmit all papers and documents on file in his office relating to such petition to this court, and the court is required to give precedence to the determination of the sufficiency of said petition.

By section 5875, O. S. 1931, the proponents of an initiated measure shall file a copy of such measure with the Attorney General, which shall contain a ballot title of not exceeding 100 words, which shall contain the gist of the proposition without any argument or statement either for or against such measure. The Attorney General is required within three days to accept such ballot title or prepare and file a proper ballot title, and by section 5876, O. S. 1931, appeal is provided from the action of the Attorney General as to the form or contents of said ballot title to the Supreme Court.

Section 5878, O. S. 1931, provides:

"Whenever a petition is accepted and its title has been decided upon, the Secretary of State shall, in writing, notify the Governor, who forthwith shall issue a proclamation setting forth the substance of the measure and the date of the referendum vote."

Other regulatory provisions are included, but they are unnecessary to the consideration of this case.

It is contended by respondents that said statutory provisions are merely directory, and that the Governor, in his discretion and acting under constitutional authority, may ignore each and every statutory requirement; that said statutory provisions are unconstitutional in that they obstruct the exercise by the people of the powers retained by them by the constitutional provisions, and that the manner of exercise of such powers so delays and impedes the exercise of the reserved powers of the people as to thwart and nullify their constitutional rights.

Section 5892, O. S. 1931, provides as follows:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

It is true that a substantial compliance with these constitutional and statutory provisions, disregarding clerical and technical errors, is all that is required. But in this case it is not even contended that there has been a substantial compliance with many of the statutory provisions referred to. On the other hand, it is conceded that after a proper protest had been filed and the Secretary of State was in the progress of a hearing as to the sufficiency of the petition, the Governor wholly disregarded said hearing and its ultimate result and on September 17, 1935, he issued his proclamation submitting the measure to the people at a special election to be held on September 24, 1935. The petition containing 180,000 signatures of alleged legal voters had been on file slightly more than 30 days, when the Governor, reciting that "protestants have unnecessarily and unlawfully and contrary to the letter and spirit of the constitutional and statutory provisions guaranteeing the right of initiative and referendum, hindered and delayed the decision of the Secretary of State on the sufficiency of said petition," proclaimed the submission of the measure to the people at an election to be held within seven days thereafter.

The purpose of the legislative provisions was to establish an orderly procedure for the exercise of the right of initiative and referendum by the people and to prevent fraud and corruption in the submission of such measures. They are designed to protect the people against hasty, disorderly, and ill-considered changes in their fundamental government and established laws. They were enacted to prevent changes in the fundamental laws before the people had been properly informed on the advisability of such changes and had had opportunity to give deliberate consideration thereto. They are designed to preserve to the people the wholesome provisions of the Constitution and the established laws and institutions thereunder. They were enacted pursuant to mandatory provisions contained in the Constitution adopted many years ago by the whole people for their future guidance. It was not without good reason that the framers of the Constitution made demand upon the Legislature for the passage of such wholesome safeguards. The imperative necessity for such cautionary measures had been demonstrated by the history of other states in the exercise of such powers. Gross frauds had theretofore been perpetrated by corrupt and designing persons which resulted in the passage of measures inimical to the welfare of the people. The framers of the Constitution, with this background in mind, deliberately required additional safeguards, and the Legislature responded with said enactments.

A speedy hearing and a prompt determination in an orderly way have been provided for and required by these statutes. A disregard of these orderly requirements would induce confusion and uncertainty. Basic changes of the fundamental law will, no doubt, from time to time, be advisable and necessary. But such changes, in the view of the framers of the Constitution and the people who ratified it, should be accomplished only with a degree of deliberation and formality commensurate with their serious import. Such statutory safeguards should be and have been by this court liberally construed to effectuate their objects and purposes. They should be declared unconstitutional and void only when they obviously and unduly curtail the rights of, or place an undue burden upon, the people in the exercise of their reserved powers. Such declaration of unconstitutionality must be accomplished through the orderly exercise of judicial power rather than by executive authority or executive disregard.

In the case of Atwater v. Hassett, 27 Okla. 292, 111 P. 802, this court held the legislative provisions relating to initiative and referendum constitutional. In the body of the opinion it is said:

"This amendment was adopted by virtue of the initiative and referendum powers of the Constitution (sections 2 and 3, art. 5, and section 3, art. 24, Const. Okla.) The petitions were prepared, filed, and submitted in accordance therewith. The initiative and referendum provisions not being self-enforcing (Ex parte Wagner, supra), legislation was essential. In cases where such amendments have been suggested by the Legislature by concurrent resolution, a certain form of ballot is prescribed. It having been especially committed to the Legislature to enact laws 'for carrying into effect provisions relating to the initiative and referendum' (article 5, sec. 58, Const.), courts will not revise such discretionary powers. State v. Shields, 4 Mo. App. 259; Okla. City v. Shields, 22 Okla. 265, 100 P. 559; In re Menefee, Treas., 22 Okla. 365, 97 P. 1014;

Rakowski v. Wagoner, 24 Okla. 282, 103 P. 632; State v. Brown, Judge, 24 Okla. 433, 103 P. 763. Such form of ballot having been prescribed in the valid exercise of its legislative discretion, this court cannot revise same."

In the case of State ex rel. Caldwell v. Hooker, 22 Okla. 712, 98 P. 964, this court, in the 4th and 5th paragraphs of the syllabus, said:

"Though a constitutional provision may be self-executing, yet legislation may be desirable for the better protection of the right secured, and to provide a more specific and convenient remedy for carrying out such provision.

"The only limitation, unless otherwise expressly indicated, imposed upon the Legislature in such legislation, is that the rights guaranteed thereunder shall not be curtailed, or any undue burdens placed thereon. Supplementary legislation in particulars where, in itself, it is not as complete as may be desirable may be enacted."

In the body of the opinion prepared by Mr. Chief Justice Williams, it is said:

"In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution the rights secured. making every step definite, and safeguarding the same so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified. Stevens v. Benson (Ore.) 91 P. 578; Reeves v. Anderson, 13 Wash. 17, 42 P. 625; Beecher v. Baldy, 7 Mich. 488; Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626; People v. Draper. 5 N. Y. 532; Cooley's Const. Lim. (7th Ed.) 122; Ordronaux's Const. Legislation, 262-265. In creating the legislative department, and in conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department of a state is not made a special agency for the exercise of specifically defined legislative powers, but is entrusted with the general authority to make laws at discretion. Cooley's Const. Lim. (7th Ed.) 126."

In the case of State ex rel. Reardon v. Scales, 21 Okla. 683, 97 P. 584, this court, in discussing self-executing provisions of the Constitution, quoted with approval from the case of Reeves v. Anderson, 13 Wash. 17, 42 P. 627, as follows:

"A constitutional provision is said (not) to be self-executing 'when it merely indicates principles, without laying down rules by means of which those principles may be given force of law.' Cooley, Const. Lim. p. 100. 'Perhaps even in such cases (where the power is self-executing) legislation may be desirable, by way of providing remedies for the protection of the rights secured, or of regulating the claim of the right so that its exact limits may be known and understood.' Id. p. 110. In our opinion it was competent for the Legislature to supplement the constitutional provision by pointing out the manner in which the right conferred by the Constitution might be exercised, and by prescribing rules for the guidance of the city council in relation thereto."

See, also, Lowther v. Nissley, 38 Okla. 797, 135 P. 3; In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271.

In the case of Stevens v. Benson (Ore.) 91 P. 577, it is said:

"But, when a provision of the Constitution is self-executing, legislation may be desirable for the better protection of the right secured and to provide a more specific and convenient remedy for carrying out such provision, and it is plain that the statute in question was intended for that purpose, and reduces to a system and simplifies the proceeding, makes every step definite, as well as placing safeguards around it 'to protect it from abuse, without curtailing the right or placing any undue burdens upon its exercise.' As said by Judge Cooley, in his work on Constitutional Limitations (p. 122), a constitutional provision that is self-executing may admit of supplementary legislation in particulars where in itself it is not as complete as may be desirable. It will also override and nullify whatever legislation, either prior or subsequent, would defeat or limit the right. Reeves v. Anderson, 13 Wash. 17, 42 P. 625; Beecher v. Baldy, 7 Mich. 488; Willis v. Mabon, supra; Swift & Co. v. City of Newport News, supra. And so the Legislature may enact laws to facilitate the enforcement of constitutional provisions that are self-executing, and such laws will be obligatory upon the court when intended by the Legislature to be mandatory, so long as they do not curtail the rights reserved or exceed the limitations specified therein."

It is obvious that a hearing before the Secretary of State as to the sufficiency of a petition, with the right of appeal to this court and a final determination thereof, constitutes a vital step in the procedure provided by the Legislature for the orderly presentation of a petition and for the pre-

vention of fraud and corruption therein. It is seriously urged by petitioners herein that the ballot title used in the submission of said measure to the people was defective in that it did not disclose that the submitted measure in fact levied various and sundry different kinds of taxes upon themselves for the purpose of carrying out the provisions thereof, but that the title disclosed only that taxes were authorized to be levied for such purpose. It is urged that they had a right to have the Attorney General prepare a proper ballot title, and that they had a right of appeal to this court, and that this court on such appeal had the duty of approving said ballot title or substituting a proper ballot title containing the gist of the proposition submitted. It is contended by them that they were denied this beneficial procedure by the arbitrary acts of the Governor in disregarding the procedure providing for a hearing before the Secretary of State and an appeal to this court. However serious this contention may be, we do not find it necessary in this case to determine that question. Nor is it necessary to determine the contention of petitioners that several provisions of the Constitution are in fact amended by said initiative measure in violation of section 1, article 24, of the Constitution, which provides that if two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately. We allude to these serious contentions for the purpose of pointing out the importance of a substantial compliance with the constitutional and statutory provisions relating to the exercise by the people of this reserved power.

It is urged that many decisions of this court construing and applying the provisions of the legislative enactments should be overruled to the end that there would be no delay on the part of the people in going to the polls and altering and changing their Constitution or laws in such manner as they deem advisable. Since the erection of this state this court has in numerous cases construed and applied the legislative provisions above mentioned. Ex parte Smith, 49 Okla. 716, 154 P. 521. Many years ago they were held constitutional and reasonable. Many legislative sessions have been held since that time and the Legislature has not seen fit to exercise its unquestioned authority to change substantially the procedure provided by it and as construed by this court. We cannot accede to the earnest insistence of respond-

ents that we overrule the numerous decisions of this court relative to said procedure.

By the provisions of section 5878, above quoted, it is made the duty of the Secretary of State, in writing, whenever a petition is accepted and its title has been decided upon, to notify the Governor thereof. This provision of the statute can have no further meaning than that the orderly processes laid down by the Constitution and the statutory provisions in aid thereof shall have been substantially complied with. When the Secretary of State performs that required duty, the Governor is vested with authority and it is his duty to issue a proclamation setting forth the substance of the measure and the date of the referendum vote. In this case the time had not yet arrived when the Secretary of State could perform that duty, for he was then engaged in a hearing in the performance of his constitutional and statutory duties when the Governor, disregarding the progress of said hearing, issued his proclamation and submitted said measure at said election. To hold that the Governor had such authority at that time would effectually strike down and make meaningless and useless the procedural provisions enacted by the Legislature pursuant to constitutional commands.

In the case of Ex parte Griggs, 63 Okla. 138, 163 P. 325, this court had occasion to consider an analogous, but not identical situation. Therein we said:

"The requirements of section 4c that such petition shall be presented to the legislative body of the corporation at its next meeting is plain and unambiguous, and does not admit of interpretation, and it would seem to be a condition precedent that such petition be so submitted before any authority exists upon the part of the chief executive officer to submit the same at an election to the electors of said city. It will not do to say that it may be disregarded, and that a failure to observe such requirements will not defeat an election, for to do so would set at naught the will of the people with reference to such matters as expressed in this provision. That construction is recognized by the Legislature in section 3391, Rev. Laws 1910, which authorizes the legislative body of a municipality to submit with each initiative measure a competing bill or resolution, and also authorizes amendments to a municipal charter proposed by initiative petition to be submitted in the same manner and confers power upon such legislative body to order a special election to vote on a municipal measure. This section indicates that it was not the intention of the Legisla-

ture to authorize the chief executive officer of a city to submit a measure proposed by initiative petition in a manner differing from that prescribed by section 4c, art. 18, and that it was not the intention to confer upon such chief executive officer the power to call a special election upon any such measure, but it is expressly declared that special elections may be called by the legislative body, thereby excluding the idea that power to do so was conferred upon the chief executive officer."

Respondents call attention to several cases holding that where an election has been held and the people have voted on a measure, irregularities in said election, where the people have substantially expressed their will, will not defeat said election. Town of Grove v. Haskell, 24 Okla. 707, 104 P. 56; City of Ardmore v. State, 24 Okla. 862, 104 P. 913; Lamb v. Palmer, 79 Okla. 68, 191 P. 184; Ratliff v. State, 79 Okla. 152, 191 P. 1038; Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406.

The distinction between those cases and the case at bar is clearly apparent in that in those cases there was authority on the part of the officer calling said election to call the same, whereas in this case the Governor was wholly without authority to submit said initiative measure.

We hold, therefore, that said initiative measure was not legally submitted to the people for approval or rejection as required by law, and said initiative measure did not become effective, and that the proclamation of the Governor declaring said election valid and said initiative measure duly passed, was wholly without force and effect, and that said constitutional amendment has not been ratified and approved by the people in accordance with the provisions of the Constitution of this state, and that petitioners are entitled to a permanent injunction as prayed for.

It is so ordered.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, WELCH, PHELPS, and GIBSON, JJ., concur. CORN, J., dissents.

CORN, J. (dissenting). On account of article 5, section 1, of the Constitution of the State of Oklahoma, which in part provides: "* * * but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, * * *" I cannot concur in the majority opinion. I therefore dissent.

RILEY, J. (concurring). The executive order and proclamation of September 17, 1935, submitting the old age pension amendment to a vote of the people prior to ascertainment of sufficiency and form of the petition, does not square with heretofore expressed views of the law.

In what may have been considered an emergency it is doubtful that the Governor was fully aware that this court, five years ago, considered and declined to approve almost an exact executive act. In re Initiative Petitions Nos. 112, etc., 153 Okla. 205, 6 P. (2d) 703; In re Initiative Petitions Nos. 112, etc., 154 Okla. 257, 7 P. (2d) 868.

I have alluded to an emergency, but it is now firmly established that such a situation does not create power. In the first cited cause, after setting forth the procedure provided by the Legislature for submission of an initiative measure, by way of quotation from the early decision (1912) In re Initiative Petition No. 23, 35 Okla. 49, 127 P. 862, it was said, in reference to the respective duties of the Secretary of State and the Governor:

"In other words, upon holding a petition valid, and upon the remission to the Secretary of State of the papers and documents relating to such petition, it would then, under section 3680, Comp. Laws 1909, be his duty to notify the Governor, in writing, whose duty then is to issue a proclamation setting forth the substance of the measure and the date of the vote thereon. Herein, in accordance with the terms and intent of the statute, is afforded a complete remedy and procedure for carrying it out."

In the cited case (153 Okla. 205, 6 P. [2d] 703) the proclamation calling the election was issued after the Secretary of State had completed his investigation and while the question of the sufficiency of the petitions was pending in this court on appeal. The question presented was whether the State Auditor should be enjoined from paying out money from the state treasury for expenses of carrying on the election. The court, by a majority of its members, expressly declined to pass upon the question whether the proposed act, if adopted, would be the law. In other words, the court declined, **in that form of an action,** to approve or disapprove the act of the Governor calling the election before final decision of this court upon the sufficiency of the petition.

At that time, together with three of my associates, I thought the question of such public importance that it should be decided. It is unfortunate that the question was not

then decided. In that cause it was suggested:

"By this adjudication this court decides that it, as such, will not, until after the horse is stolen, close the barn door."

A complete determination then would have saved thousands of dollars of the public treasure and disappointment now. The disappointment, however, might easily have been foreseen and avoided by consideration of the views expressed by four members of this court in the first cited cause and the statements of law contained in the majority decision reported in 154 Okla. 257, 7 P. (2d) 868, and the fact that in the former case the majority of the Justices were taking a contrary view only upon the issue of whether the question should then be decided, and not upon the proposition as to how the decision should go. There has never been any departure from the early decision of this court on the question as expressed by Mr. Justice Dunn in Re Initiative Petition No. 23, supra.

The exact proposition now presented was heretofore anticipated by Justices of this court, for it was said:

"If the hearing upon the sufficiency of the petition were pending, undetermined before the Secretary of State, could it be rightfully contended that the Governor possessed authority to proclaim an election on the undetermined petition? Certainly not. * * * No valid election can be held under the executive orders so promulgated. * * *" 153 Okla. 205, 6 P. (2d) 703.

I thought this was the law then—I still think so.

The opinion prepared by Mr. Vice Chief OSBORN conforms in principle with such views. I, therefore, concur, regretting that the political movement is abortive through failure to base the same upon the law, the cornerstone upon which the state is builded.

WELCH, J. (concurring.) It is urged in behalf of defendant, by brief and in oral argument, that the Governor of the state had the power and authority to determine whether or not the initiative petition was sufficient. I have sought for authority to sustain that contention, and can find none. As I view the effect of article 5 of the Constitution, it was nothing more and nothing less than a reservation of the right and power of the initiative and referendum in the people; to be exercised at an election properly called, or at a regular election at which the matter may be submitted, after compliance with "suitable provisions" to be made in detail by the Legislature to carry into effect the provisions of the article. The duty of the Legislature to "make suitable provisions" was made mandatory by the use of the word "shall"; by the same word the duty of the Governor was made mandatory to submit the question "to the people." Essentially there was not a reservation of power in the Governor, but a mandatory duty cast upon him; so also as to the Legislature. In each instance that duty, however, to be performed at such time and in such manner as should accomplish the desired result of the reservation of power in the people. So that it became the mandatory duty of each succeeding Governor, at the proper time and in the proper manner, to submit such measures to the people. This he must do, disregarding any preference he might have not to submit any specific measure. There is nothing in the Constitution giving the Governor authority to use his discretion and submit a measure when he deems the petition sufficient, or to refuse to submit it when he deems the petition for any reason insufficient. If the Governor has the claimed right to determine that a petition is sufficient and to call an election on his own determination, then obviously he would have the power to determine that a petition is not sufficient and then refuse to call an election or submit the act or amendment thereby petitioned. Without regard to whether the people might have conferred this discretionary power upon the Governor, they have made no effort to do so either in the Constitution, by legislative enactment, or initiated act. On the contrary, the Constitution imposes the mandatory duty as above noticed.

The Constitution is binding alike upon every official as upon every citizen. We all enjoy rights under the Constitution, but we must abide its limitations upon our rights. State officials have various duties under the Constitution, and those duties we have the legal power to perform, but we must likewise accept the limits on our power which we find in the Constitution. That is to say that our Constitution is at once a grant of official power and a limitation of official power. When that document provides that a named state official "shall" do a specific thing, then that duty he must perform at the proper time and in the proper manner, without consulting his discretion as to whether he will perform or wills not to do so. So I am led inescapably to the conclusion that, however capable, fair, and impartial the Governor may be; however well informed and responsive he may be as to the best needs of the

state and the desires of its citizens, he is not clothed with the authority to inspect an initiative petition and then at his discretion to submit the measure if the petition is sufficient to him, or if the petition seems not sufficient to him, to refuse to submit it to the people.

Since the Governor has not the power to refuse to submit a properly initiated measure upon his conclusion of its insufficiency, then of course he has not the power to conclude that it is sufficient and elect to submit it without regard to the orderly method as to time and manner. The true rule undoubtedly is that he must submit the measure, having due regard to the time when he should act, and to the orderly method and manner provided by suitable provisions therefor. That is in keeping with the letter and spirit of the Constitution, and of the Legislative enactments, which for so many years have been acquiesced in by the people, and followed by courts and other officials.

Thus the majority opinion correctly reasons and concludes that the Governor was without authority to act, upon the mere filing of the petition, until its sufficiency had been certified to him in the orderly, well-fixed, and long-established manner.

We must respect the constitutional intent expressed in quoted sections 3 and 8 to have the Legislature make suitable provisions for carrying into effect the provisions for the initiative and referendum, and to provide laws to prevent corruption therein; not because there is fraud in this measure, for none is shown, but because the principle must be preserved for use when and if fraud or serious illegality should be practiced in a matter of so great importance to the state as the initiative of constitutional amendments or legislative acts.

And this constitutional intent we must respect in order to give effect to each and all of the several provisions of the article. They do not conflict one with the other. They blend together, and with proper legislative provisions, make an harmonious whole, requiring proper co-operation with the people, on the part of the Governor. the Secretary of State, and the Attorney General, to the end that the people may properly and in an orderly manner provided for in detail enjoy the reserved right of the initiative and referendum in full measure.

It goes without saying that the rule must be the same as to the official duties and powers here considered, whether the proposed measure upon its merits is approved or disapproved by the officials, or whether they stand for or against its adoption. Both parties urged the necessity that this court hear and determine the serious questions attending this initiative procedure with dispatch, and in advance of any effort to commence enforcement of the numerous provisions of the act or amendment. Our duty being plain and the controlling rules of law being no less clear, we must declare them as stated in the majority opinion, supplemented, so far as I am individually concerned, by my further views as here expressed.