**STATE ex rel. McNEILL, Adm'x, et al. v. LONG et al.**

No. 25469.    Dec. 15, 1936.

410

Brown Moore, for plaintiffs in error.

S. J. Berton, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Payne county by the state of Oklahoma ex rel. J. J. McNeill, hereinafter referred to as plaintiff, against Joe Long, chairman of the board of commissioners of the city of Cushing, and T. E. Hough, clerk of the city of Cushing, hereinafter referred to as defendants. Plaintiff sought to obtain a writ of mandamus to compel defendants to call an election for the purpose of voting upon a proposed ordinance granting a franchise to the Interstate Power Company to operate a light and power plant in the city of Cushing. This action was instituted on the theory that a former election held in the city of Cushing, wherein the proposed ordinance was defeated, was void for certain reasons hereinafter set out. The cause was tried to the court, and the relief sought by plaintiff was denied, whereupon an appeal was perfected to this court. While the appeal was pending, J. J. McNeill died. Upon motion of one Clyde Hearn, he was allowed to interplead and prosecute the appeal.

On March 16, 1931, certain citizens of Cushing filed with the city clerk of Cushing an initiative petition requesting that an election be called to vote upon the proposition of granting a light and power franchise. The city clerk referred the matter to the board of city commissioners, who made an order holding the petition insufficient. An original proceeding was filed in this court by the petitioners wherein it was sought to compel the city officials to hold the election. An opinion in that case was promulgated on February 16, 1932; a petition for rehearing was filed on April 19, 1932; the opinion was withdrawn, corrected, refiled, and rehearing was denied. See In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271. It was held in that opinion that it was the duty of the city clerk to pass upon the sufficiency of the petition and to report his finding to the chief executive officer of the city, who should, if the petition be sufficient, call the election, upon 30 days' notice. But due to the fact that the city clerk was not a party to that action, the prayer was denied.

It appears that when the opinion of this court in the former case was received by the city officials, the city clerk orally informed the chairman of the board of city commissioners that the petition was sufficient, and on February 24th, the proclamation was issued calling an election to be held on March 8, 1932. Said proclamation was published in the Cushing Citizen, a newspaper of general circulation in said city, on February 25 and March 3, 1932.

On March 8, 1932, an election was held. The election officials certified that 1,189 voters voted in favor of granting the franchise and 1,925 voters voted against granting the franchise, and that there were cast seven mutilated ballots, making a total of 3,121 votes cast. This action was instituted on June 27, 1933, almost 16 months after the date of the election.

It is insisted, first, that the election is void because the same was held while the former action was still pending in this court, or prior to the ruling of this court on the petition for rehearing. Plaintiffs are in no position to raise this issue. Plaintiffs in this case and plaintiffs in the former original action in this court were the proponents of the proposed ordinance granting the franchise. They prevailed in the former action. An examination of the petition for rehearing filed in said original action in this court discloses that no effort was made by the defendants therein (defendants herein) to obtain a reversal of the opinion promulgated. Said defendants agreed with the rules of law announced in the opinion, but sought to have the opinion amended to conform to the facts.

It is next contended that under the provisions of section 5 (a), article 18, of the Constitution, as construed by this court in the case of In re Initiative Petition No. 2, Cushing, supra, it is required that 30 days' notice of the election be given, and since only 13 days' notice was given in the instant case, the election was null and void. In the case of City of Ardmore v. State ex rel. Best, 24 Okla. 862, 104 P. 913, it is said:

"In ordering an election in a city of the first class, on a question of whether certain public utility bonds shall be issued, 10 days' notice of such election, by publication of the mayor's proclamation calling the election in a newspaper of general circulation in such city at least 10 days prior to the date of the election, is required (section 1, art. 4, of an act entitled 'An act regulating elections in cities and towns * * *' (Sess. Laws 1909, p. 268, c. 16); but, if the notice be published for a less time than 10 days prior to the election, a court of equity will not, for this reason alone, declare the election void, where it is not shown or alleged that any one failed to vote because of the failure to publish the proclamation for the full statutory period,

and where it is conceded that the general voting public had notice of the election and participated therein."

We quote further from the body of the opinion:

"This court, in the case of Town of Grove v. C. N. Haskell et al., 24 Okla. 707, 104 P. 56, wherein a question very similar to the one now under consideration was involved, said:

"'Counsel for plaintiffs in their petition, in no manner aver or charge that any voter failed to attend and vote at the election held by reason of want of notice or knowledge, or that the failure to post the notices in exact conformity with the requirements of the proclamation had any effect whatever upon the result of the election. In the absence of such a showing and averment it is our judgment the correct rule in such cases is that, although the notices may be posted for a time less than that specified, the court will not, for this reason alone, declare the election void, at the suit of a party who participated therein, where it is not also shown that the electors of the county did not participate therein by reason of lack of notice or knowledge, and that a different result would have obtained if the full statutory notice had been given."

In the case of Town of Grove v. Haskell, supra, it is said further:

"Elections are the ultimate expression of the sovereign will. When fairly expressed—that is, free from taint of fraud or charge of improper conduct—it becomes the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors. All reasonable presumptions as to their regularity will be indulged, and the penalty of disfranchisement will not be visited upon a qualified voter where he is not at fault, except in response to plain mandatory requirement of the statute."

We quote from the body of the opinion in the case of State ex rel. Freeling v. Sullivan, 80 Okla. 81, 194 P. 446:

"'When a special election is assailed on the ground of lack of compliance with all the statutory requirements in reference to notice, but there is no averment or showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, the same will not be held void on this account.' Town of Grove v. Haskell. Governor, 24 Okla. 717, 104 P. 56; City of Ardmore et al. v. State ex rel. Best, 24 Okla. 862, 104 P. 913; North v. McMahan, 26 Okla. 502, 110 P. 1115; Haskell, Governor, v. Reigel, 26 Okla. 87, 108 P. 367; Lowe et al. v. Consoli-

dated School District No. 97, Blaine County, et al., 79 Okla. 115, 191 P. 737; Ratliff et al. v. State ex rel. Woods, County Attorney, 79 Okla. 152, 191 P. 1038.".

In the case of Wadsworth v. Neher, 138 Okla. 4, 280 P. 263, it was held:

"In the absence of fraud, an election will not be held invalid on the ground that mandatory provisions of the state election laws have been disobeyed, unless it is expressly declared in the statute that the particular act is essential to the validity of an election or that its omission shall render it void. Elections are the ultimate expression of the sovereign will. When fairly expressed —that is, free from taint of fraud or charge of improper conduct—it becomes the duty of the courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors."

In the case of McLoughlin et al. v. City of Prescott (Ariz.) 6 P. (2d) 50, it is said:

"We concur in the rule stated by the court in Weisgerber v. Nez Perce County, 33 Idaho, 670, 197 P. 562, 563, as follows: 'However, we are of the opinion that the correct rule, and the one supported by the great weight of authority, may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void.' See, also, Sizemore v. Board of Com'rs., 36 Idaho, 184, 210 P. 137; King v. Independent School Dist., Class A. No. 37, 46 Idaho, 800, 272 P. 507; In re Validation of East Bay Mun. Util. Dist. Water Bonds, 196 Cal. 725, 239 P. 38.

"This, in effect, is the rule announced in Allen v. State, supra, wherein we said: 'Consummated or completed acts we will not annul for reasons that might have possessed merit, if urged at the proper time.'"

It is the contention of plaintiff that these cases are not applicable because they deal with the requirements of the statutes and not with requirements of the Constitution; that each and every one of the provisions of the Constitution should be treated as man-

datory without reference to the rules distinguishing between directory and mandatory statutes. The authorities cited to sustain this argument are not in point from a standpoint of facts.

We concede the rule to be that both statutory and constitutional provisions fixing the time and manner of giving notice of elections are mandatory and will be upheld strictly in a direct action instituted before an election. The reason that said provisions are to be construed as directory after an election has been held, is that there has intervened an expression of the sovereign will, and where such will is fairly expressed it becomes the duty of the courts to sustain such expression where it can be done by a liberal construction of the laws relating thereto. The validity of an election depends upon whether or not the electors had actual notice thereof and participated therein and whether or not a failure to comply with the law deprived the electors of an opportunity of voting.

It is urged that certain language used in the case of Associated Industries v. Oklahoma Tax Commission, 176 Okla. 120, 55 P. (2d) 79, is contrary to the determination herein. But the language relied upon is used in the discussion of wholly different issues presented therein and has no application to the decisive question herein. The distinction was clearly noted and pointed out in that opinion, wherein we said:

"Respondents call attention to several cases holding that where an election has been held and the people have voted on a measure, irregularities in said election, where the people have substantially expressed their will, will not defeat said election. Town of Grove v. Haskell, 24 Okla. 707, 104 P. 56; City of Ardmore v. State, 24 Okla. 862, 104 P. 913; Lamb v. Palmer, 79 Okla. 68, 191 P. 184; Ratliff v. State, 79 Okla. 152, 191 P. 1038; Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406.

"The distinction between those cases and the case at bar is clearly apparent, in that in those cases there was authority on the part of the officer calling said election to call the same: whereas, in this case the Governor was wholly without authority to submit said initiated measure."

In this case there was authority in the city officials to call the election. If some jurisdictional step had been lacking, obviously the rule announced in the Associated Industries Case would be determinative.

No fraud is alleged or proved in this action. No showing is made that the failure to give the full notice required by law op-

erated in any manner to change the result of the election. An examination of the record discloses that the electorate was well informed as to the date of the election. We quote from the record as follows:

"By Mr. Moore (attorney for plaintiff): There isn't any dispute but what there was a great deal of publicity about this purported election."

It does not appear that any effort was made on behalf of the proponents of the initiated measure to secure a postponement of the election in order that further notice could be given or until the petition for rehearing had been acted upon by this court. Instead, they entered into a spirited campaign upon the issues raised by the initiated measure. A substantial majority of the electors expressed themselves as being opposed to the measure. On June 27, 1933, almost 16 months thereafter, this action was instituted in the district court to require the calling of another election on the ground that the former election was null and void. Under the allegations and proof, the judgment of the trial court was correct. The judgment is affirmed.

McNEILL, C. J., and BAYLESS, BUSBY, and CORN, JJ., concur. RILEY, WELCH, PHELPS, and GIBSON, JJ., dissent.

McNEILL, C. J. (concurring). I concur unreservedly in the majority opinion. I have given the questions involved special study and I desire to present some additional views in support of the rules of law which have been announced.

It seems to me that the election in question was sought to be set aside for a mere informality or irregularity which does not rise to the dignity of affecting the results of the election, nor is it so contended. In fact, it is admitted that wide publicity was given this city election. Both sides printed advertisements in daily issues of the newspapers printed in the city of Cushing; circulated handbills; had active workers and house-to-house canvassers. There were 1,189 votes which were cast for the adoption of the ordinance and 1,900 votes against the same. It is conceded that this was the largest vote ever cast in the city of Cushing.

It is contended that the provisions of section 5 (a), article 18, of the Constitution, as construed by this court in the case of In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271, required that a 30 days' notice of the election should be

given, and since only a 13 days' notice was given, the election was void.

Suppose that the city clerk, in preparing the notice, had made a mistake in making the computation and gave notice of 29 days instead of the 30 days; that pursuant to said notice the election was held; that there were only 3,000 qualified electors in the city of Cushing; that the entire vote was cast, and that the result showed only 50 votes against the proposition. It would compel strong reasoning to sweep aside such an election on the ground it was void because the constitutional provision required a 30 days' notice instead of the 29 days' notice which was actually given. Surely, it should be asserted in no uncertain terms by a party who seeks to vitiate an election because of failure to strictly comply with a statutory or constitutional requirement as to the giving of notice of an election that the defect in the published notice misled the voters and prevented the electors who did not vote to the extent that if such defect in time had not been present their votes would have effectively changed or rendered the result doubtful. A person seeking to set aside a public election should sustain such a burden, but no such theories are present in the case at bar, and sole reliance to defeat the voice of the people is placed upon the strictly technical irregularity in giving a 13 days' notice instead of 30 days' notice as required by the Constitution.

I wish to reiterate the thought expressed in the majority opinion that prior to an election the directions as to the giving of notice of elections should be construed as mandatory upon the officials charged with the duty of calling an election, but after the election, such requirements as to time and manner of giving notice should be directory, unless it is made to appear that the failure to give such notice as prescribed deprived a sufficient number of the electors of the opportunity of giving the free expression of their will. See McLoughlin v. City of Prescott (Ariz.) 6 P. (2d) 50. This is true whether the required notice is statutory or constitutional. The details of notice as to time and place are procedural and not jurisdictional questions. The particular number of days required in a notice for the calling of an election is a mere formality and only one of the formal and preliminary steps in procedure governing elections. If the required number of days is the essence of the thing required, of course, the notice as to such detail would be jurisdictional,

otherwise directory. The essential question in the instant case was that there was power and authority for the calling of the election. In my opinion that was the jurisdictional question. If there was authority to call such an election, it then becomes necessary to consider the other subsequent and incidental questions of whether the electors were in fact informed as to the time, place, and purpose of the election and generally voted at the designated time and place upon the questions submitted.

If such conditions existed, then can it otherwise than clearly be said that the fundamental purpose of the Constitution in directing a 30 days' notice has not been accomplished when the election was held in good faith? In the case of Commissioners of Leavenworth Co. v. John Higginbotham, 17 Kan. 62, the Supreme Court of Kansas considered a constitutional requirement as not being essential to the validity of a law. Article 1, section 14, of the Constitution of Kansas provides as follows:

"Every bill and joint resolution passed by the House of Representatives and Senate shall within two days thereafter be signed by the presiding officers, and presented to the Governor." etc.

The Constitution of Kansas made no other provision for the officers of each house to sign a bill at any time subsequent to the expiration of said two days. In that case it was contended that the aforesaid constitutional provision was absolutely mandatory and that there could be no valid law unless its terms were fulfilled to the very letter and unless the bill was signed within the prescribed two days by said presiding officers. The Supreme Court of Kansas upheld the law although not signed by the officers as directed by the Constitution. That court, speaking through Mr. Justice Valentine, said:

"The only office that the signatures of the presiding officers is intended to perform is to furnish evidence of the due passage and validity of the bill. Such signatures are only portions of the many evidences of the due passage and validity of the bill. And a bill may in some instances, as we think, be valid although the signatures of one of the presiding officers may be omitted."

See, also, Prohibitory Amendment Cases, 24 Kan. 700; State ex rel. Mullen v. Doherty, 16 Wash. 382, 47 P. 958; Walker v. City Counsel of Montgomery, 139 Ala. 468; Com'rs Court of Washington Co. v. State, 151 Ala. 561.

It is settled law that an election will

not be set aside for a mere informality or irregularity which in no wise affected the result of the election. Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 641, sec. 374, and cases cited therein; McCrary on Elections, secs. 176, 177, 178, 179, and 181; Mechem on Public Officers, p. 106, secs. 170 and 184.

It is my view that the weight of the authorities uphold the theory in election matters that if the will of the people has been freely exercised, and has been registered by the voters, and no fraud or corruption has entered into the election, and all of the electors have been given a free opportunity to exercise their franchise, and the want of the notice has not deprived a sufficient number of the electors the opportunity to change or render doubtful the result of the election, such election should be considered as valid and not void. Of course, it should be the duty of governing officials to see that proper notice is given, but it does not follow that an election should be set aside and declared void after the electors have freely submitted their will by their vote. To hold otherwise would be permitting some ministerial officer to defeat, nullify, and repeal and hold for naught the will of the majority of the electors. The will of the majority should be respected and, when an election is held in good faith under authority of law, a mere formal step, an irregularity resulting through an error or mistake, should not sweep away the undoubted will of the people when clearly expressed. The right to hold the election in the instant case came from the Constitution and not from the notice. The power to hold such an election was jurisdictional and the notice designating the time of holding the election was directory and not jurisdictional.

PHELPS, J. (dissenting). I cannot concur in the majority opinion. My belief is that such a constitutional provision as is involved in this case, to the effect that 30 days' notice of the election must be had, is mandatory, and that no justification exists for classing it as merely directory.

The general rule, as stated in 12 C. J. 740, is well supported by the cases:

"It is an established general rule that constitutional provisions are to be construed as mandatory unless, by express provision or by necessary implication, a different intention is manifest. Some cases even go so far as to hold that all constitutional provisions are mandatory. But more accurately, the test as to whether a provision is mandatory or directory is the intention of those who

framed and adopted it. This intention is to be gathered, not so much from a technical construction of particular words, as from a consideration of the language and purpose of the entire clause. There is a strong presumption in favor of its being mandatory."

Frequently statutes are held directory, but, as I understand it, constitutional provisions stand in a different class. In this connection the following general statement from 6 R. C. L. 55 is pertinent here:

"In the interpretation of Constitutions questions frequently arise as to whether particular sections are mandatory or directory. The courts usually hesitate to declare that a constitutional provision is directory merely in view of the tendency of the Legislature to disregard provisions which are not said to be mandatory. Accordingly, it is the general rule to regard constitutional provisions as mandatory, and not to leave it to the will of a Legislature to obey or disregard them. This presumption as to mandatory quality is usually followed unless it is unmistakably manifest that the provisions were intended to be directory merely. The analogous rule distinguishing mandatory and directory statutes are of little value in this connection, and are rarely applied in passing upon the provision of a Constitution. So strong is the inclination in favor of giving obligatory force to the terms of the organic law, that it has even been said that neither by the courts nor by any other department of the government may any provision of the Constitution be regarded as merely directory, but that each and every one of its provisions should be treated as imperative and mandatory, without reference to the rules distinguishing between directory and mandatory statutes."

This court has gone on record as adopting the views expressed above, for in Board of Commissioners v. Hammerly, 85 Okla. 53, 204 P. 445, we said:

"It is a rule applicable * * * alike to statutory and constitutional law that when the law directs something to be done in a given manner, or at a particular time or place, then there is an implied prohibition against any other mode or time or place of doing the act. The rule applies with particular force to the interpretation of constitutional law."

Speaking concerning the same distinction, the Supreme Court of California, in People v. Gunn, 24 P. 719, observed:

"* * * The respondent claims: First, that the alleged defects are insignificant and immaterial; and cites many authorities, which, it is claimed, support that proposition. But the misfortune is that they are not in point. They all relate to procedure under statutes held to be merely directory. In this case, the procedure was under constitutional provisions expressly declared to be mandatory

and prohibitory, * * * The language of Judge Cooley in his work on Constitutional Limitations (page 78) * * * is directly in point, and shows that, even in the absence of a clause making its provisions mandatory and prohibitory, the courts will not ho'd the provisions of a Constitution to be directory or unessential, but will rather hold that wherever it prescribes a mode, that mode is the measure."

Section 4c of article 18, dealing with the initiative and referendum, was involved in the case of Ex parte Griggs, 63 Okla. 138, 163 P. 325. The failure to observe the requirements of section 4c rendered the election invalid, this court observing:

"It will not do to say that it may be disregarded and that a fai'ure to observe such requirements will not defeat an election, for to do so would set at naught the will of the people with reference to such matters as expressed in this provision."

The courts are not justified in ignoring such a plain and unambiguous mandate as section 5a of article 18 of our Constitution. The Constitution requires that 30 days' notice be given. That fact was brought to the attention of the present litigants in our first opinion written in this case, cited but not quoted in the majority opinion. In spite of that fact, they gave only 13 days' notice, which is less than half the time required by the Constitution. The makers of the Constitution did not contemplate that the courts were authorized to look into the facts of such cases as these, for the purpose of determining whether the provisions of the Constitution should be enforced in some cases and ignored in others.

It is my intention herein to point out the distinction between constitutional requirements and statutory requirements, in so far as the question of the mandatory nature thereof is concerned. It is significant that no similar decision of this court, involving a **constitutional** requirement, is cited in the majority opinion. All of the cases cited therein involve mere statutory requirements, with the possible exception of Town of Grove v. Haskell, Governor, 24 Okla. 707, 104 P. 56, but the refusal of the court to avoid the election in that case was based upon the principle that there was a substantial comp'iance with the Governor's requirement as to the period of notice of a county seat election, where the Constitution provided that he should name the period of notice to be given. In that case, the period of publishing was in absolute accord with the requirement, but the period of posting was "between five and six weeks, instead of the full term of six weeks." While the period of notice in that case was substantially in accord with the requirement, regardless of whether it was a constitutional requirement or otherwise, I do not think that even the majority opinion in the present case holds, or attempts to hold, that 13 days' notice is a substantial compliance with a constitutional requirement of 30 days. The opinion simply holds that if no fraud is shown, or it is not shown that the result would have been different under the proper period of notice, the constitutional requirement is not mandatory.

In using such language, and in adopting such judicial utterances, the opinion is directly contrary to a decision rendered by this court less than a year ago, and written by the same Justice who is author of the present opinion. I refer to Associated Industries of Oklahoma et al. v. Oklahoma Tax Commission, 176 Okla. 120, 55 P. (2d) 79.

That case, like this, involved validity of an election pursuant to our initiative and referendum statutes and constitutional provisions. By virtue of section 4 (a) of article 18 of our Constitution, the same rules apply to initiative and referendum petitions of municipal corporations as apply to such petitions in state-wide elections. The facts were that the Governor, while the Secretary of State was conducting a hearing as to the sufficiency of the petition, and before the Secretary of State had completed his hearing, issued an executive order and proclamation directing that the initiative petition be submitted to the people for vote. The election was held, and thereafter the Secretary of State completed his hearing, and found that the initiative petition was sufficient in form and was signed by the requisite number of legal voters. At the polls, the initiative petition was overwhelmingly adopted, there being 204,522 votes cast in its favor and 78,783 votes being cast against it.

In spite of the fact that an election had already been held, and in spite of the fact that no fraud was shown, this court held the election invalid. The **basis of the opinion,** as stated in various ways throughout its length, and in the concurring opinions, was that:

"Courts can approve only those acts of the people which are in substantial conformity with the procedure provided by or under authority of the Constitution."

Also, that result was reached in the very face of section 5892, O. S. 1931 (relating to

the method of submission), which section provided that:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. * * *"

The Associated Industries Case recognized the fact that there must be an orderly procedure for the exercise of the right of initiative and referendum. It was there pointed out that such provisions as were involved in that case and in this case

"are designed to protect the people against hasty, disorderly, and ill-considered changes in their fundamental government and established laws. They were enacted to prevent changes in the fundamental laws before the people had been properly informed on the advisability of such changes and had had opportunity to give deliberate consideration thereto. They are designed to preserve to the people the wholesome provisions of the **Constitution** and the established laws and institutions thereunder. They were enacted pursuant to **mandatory provisions contained in the Constitution** adopted many years ago by the whole people for their future guidance." (Emphasis mine.)

In the Associated Industries Case we were considering the same question in substance as is concerned in the instant case, namely, the premature submission of the petition to a vote, thereby ignoring legislative enactments and constitutional provisions concerning the period of time for the doing of an official action connected therewith. We there laid great stress and importance upon " * * * pointing out the importance of a substantial compliance with the constitutional and statutory provisions relating to the exercise by the people of this reserved power."

We there re-affirmed, and quoted, the excerpt from Ex parte Griggs, supra, which I have copied above. In holding the election invalid we said that the initiative petition had "* * * not been ratified and approved by the people in accordance with the provisions of the Constitution of this state, and that petitioners are entitled to a permanent injunction as prayed for."

Justice Welch, in a concurring opinion, stated:

"The Constitution is binding alike upon every official as upon every citizen. We all enjoy rights under the Constitution, but we must abide its limitations upon our rights. State officials have various duties under the Constitution, and those duties we have the legal power to perform, but we must likewise accept the limits on our power which we find in the Constitution. That is to say, that our Constitution is at once a grant of official power and a limitation of official power. When that document provides that a named state official 'shall' do a specific thing, then that duty he must perform at the proper time and in the proper manner, without consulting his discretion as to whether he will perform or wills not to do so."

Justice Welch further stated:

"The true rule undoubtedly is that he must submit the measure, having due regard to the time when he should act, and to the orderly method and manner provided by suitable provisions therefor. That is in keeping with the letter and spirit of the Constitution, and of the legislative enactments, which for so many years have been acquiesced in by the people, and followed by courts and other officials."

Furthermore, it is not an open question in this jurisdiction whether the giving of a 30 days' notice, as required by section 5 (a) of article 18 of the Constitution, is mandatory on the one hand, or directory on the other. We have expressly announced that it is mandatory. The following unequivocal announcement is from the case of In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271:

"* * * It is the mandatory duty of the chief executive officer of the city to call the election, and give notice thereof as required by section 5 (a) of article 18 of the Constitution."

I am unable to comprehend why, if the foregoing excerpt was a correct statement of the law when that opinion was filed, and if the same principles were still the law when the Associated Industries decision was made, there should now be such a sudden change. I do not believe that this court is clothed with any more authority to construe the Constitution in such a manner as to render any portion thereof ineffective than the Legislature is clothed with that power. If the Legislature should attempt to change the period of notice from 30 days to 13 days, there is little doubt of what the decision of this court must be as to the constitutionality of any such enactment. The framers of our Constitution, in providing that the notice should be 30 days, had a good and sufficient reason for so doing, and it seems clear to me that justice may more readily be assured in the greatest number of cases, and that fraud and injustice may be avoided in future elections more certainly by adhering to the plain terms of our Constitution, in accordance with the time-honored rules relating to the importance and binding effect of such constitutional provisions. Paraphrasing the language of the immortal Patrick Henry, Whatever course others may take, as for me, I shall continue

to stand squarely upon the provisions of our Constitution.

The majority opinion has noticed the Associated Industries Case, and has attempted to distinguish between it and the present case. The attempted distinction is the claim that in that case there was no authority to call the election, while in this case there was such authority. Certainly, there was authority in this case to "call" the election, **but there was no authority to call it illegally, to call it in defiance of positive constitutional mandate.** Both cases involve constitutional provisions centering about the call, one **when** the call shall issue, and the other **under what terms** it shall issue. We cannot properly enforce the one and ignore the other. And when the attempted distinction points out that "in this case there was authority to call the election", it is overlooking this fact: that whether there was authority to "call" the election (the mere naked act of "calling" it, in some manner, regardless of the Constitution) is not the question.

The Associated Industries Case was correct. It was correct in the paragraph thereof which has been copied into the majority opinion when it made a distinction between the cases cited therein and that case, but the distinction announced between the cases cited therein and that case is not the **real** or **only** distinction; there is the further important distinction (whether noticed in that case or not) that those cases involved statutory requirements, while this and the Associated Case both involve constitutional requirements. In addition to the excerpts from the Associated Case which are copied above, a reading of the entire opinion necessarily reveals that its basis, its entire underlying foundation, is that the election requirements which are in our Constitution are mandatory, and must be obeyed, even in those cases where no fraud is involved and where there is no claim that but for the irregularity a different result would have obtained.